STANDARD ALASKA PRODUCTION COMPANY, Exxon Corporation, Chevron U.S.A., Inc., Plaintiff–Appellants/Cross–Appellees,

v.

Grace B. SCHAIBLE, Attorney General of Alaska, Judith M. Brady, Comm'r of Natural Resources of Alaska, Margaret J. Hayes, Director of Div. of Lands, James E. Eason, Director of Div. of Oil and Gas, and Walter L. Carpeneti, Judge of Superior Court of Alaska, Defendants–Appellees/Cross–Appellants.

Nos. 88–4008, 88–4035.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 1989.

Decided April 21, 1989.

C. Douglas Floyd, San Francisco, Cal., for plaintiff-appellant/cross-appellees, Chevron U.S.A., Inc.

Bruce Botelho, Asst. Atty. Gen., Dept. of Law, Oil, Gas & Mining Section, Juneau, Alaska, for defendants-appellees/cross-appellants.

Before WRIGHT and ALARCON, Circuit Judges, and RAFEEDIE *, District Judge.

* Honorable Edward Rafeedie, United States District Judge for the Central District of California, sitting by designation.

ALARCON, Circuit Judge:

Standard Alaska Production Company, Exxon Corporation and Chevron U.S.A., Inc. (Producers), appeal from the order granting the motion of Grace B. Schaible, et al. (State Officials) to dismiss this suit on the ground that the claim is not ripe. The State Officials cross-appeal from (1) the denial of their motion to dismiss pursuant to the Eleventh Amendment and (2) the refusal to dismiss this matter under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

## I

We review independently, without deference to the district court's rulings, each of the issues raised on this appeal: (1) whether the district court erred in denying the motion to dismiss based on the ground that federal jurisdiction was lacking due to the Eleventh Amendment, *South Delta Water Agency v. United States Dept. of Interior*, 767 F.2d 531, 535 (9th Cir.1985); (2) whether the district court erred in dismissing the case on ripeness grounds, *Assiniboine and Sioux Tribes v. Board of Oil and Gas Conservation of Montana*, 792 F.2d 782, 787 (9th Cir.1986); and (3) whether this suit should have been dismissed pursuant to the *Younger* abstention doctrine, *World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1081 (9th Cir.1987).

## II

On September 2, 1977, the State of Alaska (Alaska) filed an action in an Alaskan trial court for injunctive and declaratory relief against Amerada Hess Corporation and eighteen North Slope oil companies including Standard Alaska Production Company, Exxon Corporation, and Chevron, U.S.A., Inc. *State of Alaska v. Amerada Hess Corporation et al.*, Civil No. IJU–77–847, (Hess). Alaska sought a declaration of its rights under certain oil and gas leases negotiated with the Producers.

On July 6, 1983, Alaska filed a second amended complaint in the state action seeking damages for underpayment of royalties pursuant to the leasing agreement. In this pleading, Alaska alleged it had not received all of its royalties because the Producers had been underestimating the value of the oil and gas taken from Prudhoe Bay and Kuparuk River oil fields. The state court proceedings are scheduled for trial on April 4, 1990.

In their amended complaint for injunctive and declaratory judgment, the Producers claim that there would be three basic adjustments to Alaska's share of royalties: (1) the lessees will owe at least $1 billion in royalties on past production; (2) the value of royalties on future production would increase by an additional $1 billion; and (3) Alaska would receive $600 million in contract adjustments on any oil previously received in the form of royalties-in-kind.

The Producers contend that "the monetary recovery sought by the state in *Hess* will substantially increase the Alaska Permanent Fund and, consequently, the annual amount of dividends from the fund that every Alaska resident has a statutory right to receive." Brief for Appellants at 3. Every resident of Alaska who applies and who meets certain residency requirements is entitled to receive an annual dividend from the earnings on the permanent fund investment. (Alaska Statute §§ 43.23.005–.015.) The residency requirements are: (1) that an applicant live in Alaska from October 1st through March 31st of the year preceding disbursement of dividends, and (2) the applicant submit a written statement of intent to remain a permanent resident of Alaska. *Id.* The amount of each year's dividend is determined by a fixed formula. (Alaska Statute 37.13.140).

## III

On November 2, 1987, the Producers filed suit in the District Court for the Dis-

trict of Alaska for injunctive and declaratory relief under 42 U.S.C. § 1983 "on the ground that the continuation of [the state] action is a violation of their Fourteenth Amendment right to trial before an impartial tribunal." Brief for Appellants at 2. They claim that with an annual increase in dividends, "every potential judge and juror in Alaska state court has a direct and substantial pecuniary interest in the outcome of *Hess.*" *Id.* at 3. The Producers argue that issuance of an injunction "would not prevent the state from pursuing its royalty claims against the *Hess* defendants, but would require it to pursue those claims in an alternative forum where the judges and jurors have no financial interest in the case, such as the court of another state." *Id.*

The State Officials moved to dismiss on the following grounds: (1) The Eleventh Amendment deprives the district court of subject matter jurisdiction; (2) There is no justiciable case or controversy; (3) Principles of comity and federalism embodied in the rule of abstention require dismissal; and (4) The complaint failed to allege sufficient facts to support a finding of a due process violation.

This matter was assigned to Judge Kleinfeld of the United States District Court for the District of Alaska. Judge Kleinfeld recused himself from presiding over this matter. Judge Kleinfeld advised the parties of the reasons he disqualified himself as follows:

> I don't think we need go so far as to examine a judge's balance sheets and the exact size of his family. Mine is five, as counsel obviously researched when they wrote their memorandum. Some judges have smaller families and they make less money off of dividends, but it doesn't matter a whole lot, it's still substantial. It's substantial enough so that it would make a good hostile headline impairing the appearance of integrity of the judicial process.

As a result of Judge Kleinfeld's recusal, Judge Belloni of the United States District Court for the District of Oregon was designated to preside over the federal court proceedings. The district court dismissed the Producers' federal cause of action on ripeness grounds. The court expressly denied the motions to dismiss based on the Eleventh Amendment and failure to state a claim. The court did not reach the State Officials' abstention arguments.

We first consider the State Officials' contention in their cross-appeal that the district court lacked jurisdiction to hear this matter because they are immune from suit under the Eleventh Amendment.

## IV

■ The State Officials argue that there is no federal court jurisdiction over this matter because the Eleventh Amendment prohibits a citizen from suing a state. *Ex Parte Young*, 209 U.S. 123, 159–160, 28 S.Ct. 441, 453–454, 52 L.Ed. 714 (1908). Eleventh Amendment immunity extends to an action or a suit filed against a state agency or official. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101–102, 104 S.Ct. 900, 908–909, 79 L.Ed.2d 67 (1984). The Eleventh Amendment does not, however, preclude a suit to enjoin a state official from violating the federal constitution. *Ex Parte Young*, 209 U.S. at 159–160, 28 S.Ct. at 453–454; *Pennhurst*, 465 U.S. at 101–103, 104 S.Ct. at 908–909.

The Producers allege that the filing of the *Hess* action in an Alaskan state court is a violation of their right under the Fourteenth Amendment to an impartial tribunal. They contend that the monetary recovery sought in the *Hess* matter will increase the annual dividends paid to the Alaska residents. Thus, it is argued, every judge and potential juror in that state "has a direct and pecuniary" interest in the outcome of *Hess.* Brief for Appellants at 3.

The State Officials argue, however, that "the connection between them and the alleged due process deprivation must be deemed too tenuous to permit reliance upon the doctrine of *Ex Parte Young* to avoid the bar of Eleventh Amendment state immunity." Brief for Appellees at 36. They further argue that the essence of the Producers' claim "is directed at the effect of

the Permanent Fund dividend program on the *Amerada Hess* judge and jury; their claim does not arise out of any allegation of unconstitutional conduct on the part of any of the defendants named here." *Id.*

The State Officials' argument is unpersuasive. They are the parties responsible for the filing and maintenance of the state court action against *Hess.* Grace B. Schaible is the Attorney General of Alaska. She is responsible for bringing civil suits on behalf of the state. (Alaska Stat., § 44.23.020(b)). Judith M. Brady, the Commissioner of Natural Resources of the State of Alaska, Mary J. Hayes, the Director of the Division of Lands, and James E. Eason, the Director of the Division of Oil and Gas are the officials responsible for collecting the royalty revenues in dispute in the state court proceedings. (*Id.* §§ 44.37.-010–.020, 38.05.035.) The action was assigned for trial before Walter L. Carpeneti of the Superior Court of the State of Alaska. The required connection with the enforcement of the act, under the doctrine announced in *Ex Parte Young*, is therefore present.

We find that the Eleventh Amendment does not bar the Producers from seeking relief in the federal courts and we affirm the district court's denial of appellees' motion to dismiss under Eleventh Amendment state immunity.

## V

█ The Producers contend that the district court erred in granting the state officials' motion to dismiss on the ground that the issue was not ripe for review. The Producers allege that "the district court failed to address the relevant questions governing the ripeness determination." Brief for Appellants at 13.

The doctrine of ripeness is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Lab-oratories v. Gardner,* 387 U.S. 136, 148–149, 87 S.Ct. 1507, 1515–1516, 18 L.Ed.2d 681 (1967). Ripeness requires an evaluation of "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149, 87 S.Ct. at 1515. A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final. *Friedman Brothers Investment Co. v. Lewis,* 676 F.2d 1317, 1319 (9th Cir.1982).

The Producers contend that their due process claim is ripe for review because "there is nothing hypothetical, speculative, remote, or contingent about the denial of due process presently resulting from the pending Alaska state court action in *Hess.*" Brief for Appellants at 10. They claim that their action seeks "to enjoin *currently ongoing* proceedings before a financially interested tribunal on the ground that they have an absolute due process right to the adjudication of *Hess* by a disinterested judge and jury." *Id.* (emphasis in original). They argue that "[t]he right to a decisionmaker free of a pecuniary interest is absolute [and] it does not depend on any determination of actual bias." *Id.* at 11. The Producers assert that their "due process claim in this case thus presents a legal issue that 'will not be clarified by further factual development.'" *Id.* (citation omitted). They claim that the financial interest of every Alaskan judge or juror in the outcome of the pending state proceedings supports a ruling that, as a matter of law, Alaska cannot provide an unbiased tribunal.

The Producers argue further that the district court should not have dismissed their claim on ripeness grounds because "the state's disqualification procedures are inadequate to cure the financial bias in *Hess*, which, … affects every Alaska resident regardless of subjective belief, and works a per se constitutional disqualification of every judge or juror in Alaska state court." *Id.* at 24. They contend that "[s]uccessful invocation of the state's disqualification procedures would simply result in the appointment of another judge or

juror having an identical pecuniary interest." *Id.* at 24–25. The Producers rely on *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), for the proposition that "an 'adequate opportunity' does not exist where, as in this case, the state tribunal has a financial interest in the outcome of the case:

> "[*Younger*] naturally presupposes the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved. Here the predicate for a *Younger v. Harris* dismissal was lacking, for appellees alleged, and the District Court concluded, that the State Board of Optometry was *incompetent by reason of bias to adjudicate the issues pending before it.*" (*Id.* at 577, 93 S.Ct. at 1697) (emphasis added).' "

Reply Brief for Appellants at 21.

A brief summary of the issue before the Supreme Court in *Gibson* will readily demonstrate that it does not support the Producers' argument. In *Gibson,* the Alabama Optometric Association (Association) filed with the Alabama Board of Optometry (Board) charges against various optometrists (the employee-pharmacists) who were practicing their profession as employees of Lee Optical Co. The Association asked the Board to revoke the licenses of each of the employee-optometrists. The Association alleged that the practice of optometry by individuals employed by a business establishment was unethical conduct. *Id.* at 567–568, 93 S.Ct. at 1692–1693.

Two days later, the Board filed a suit in state court against Lee Optical Co. "seeking to enjoin the company from engaging in the 'unlawful practice of optometry.' " *Id.* at 568, 93 S.Ct. at 1693. The state court enjoined Lee Optical from practicing optometry without a license or from employing licensed optometrists. Thereafter the Board scheduled hearings on May 26th and 27th on the unethical conduct charges brought against the employee-optometrists by the Association.

The employee-optometrists filed suit in the United States District Court against the Board, its individual members, and the Association pursuant to the Civil Rights Act, 42 U.S.C. § 1983, for an injunction against the scheduled license revocation proceedings. *Id.* at 569, 93 S.Ct. at 1693. The employee-optometrists alleged that they could not get a fair and impartial hearing because the Board was biased. *Id.* at 570, 93 S.Ct. at 1693.

The district court concluded that the Board was so biased by pecuniary interests that it could not conduct the revocation hearings. *Id.* at 578, 93 S.Ct. at 1697. The district court found that of the 192 licensed optometrists in Alabama, 92 were employed by a business establishment. None belonged to the Association. Each member of the Association was an independent optometrist engaged in private practice for his own accord. Only members of the Association were eligible to be members of the Board. *Id.* at 578, 93 S.Ct. at 1698. The district court concluded from these facts that revocation of the employee-optometrists licenses "would possibly redound to the personal benefit of members of the Board." *Id.* at 578, 93 S.Ct. at 1698.

The Supreme Court concluded that the district court's findings were not clearly erroneous. *Id.* at 579, 93 S.Ct. at 1698. Accordingly, the Supreme Court held in *Gibson* that, based on the district court's findings, "the pecuniary interest of the members of the Board of Optometry had sufficient substance to disqualify them, given the context in which this case arose." *Id.* at 579, 93 S.Ct. at 1698. The Supreme Court also concluded that the district court did not err in failing to abstain because the matter was pending before the Board. *Id.* at 577, 93 S.Ct. at 1697. The Court instructed that the application of *Younger v. Harris* "presupposes the opportunity to raise and have timely decided by a *competent* state tribunal the federal issues involved." *Id.* (emphasis added). The Supreme Court concluded that "the State Board of Optometry was incompetent by reason of bias to adjudicate the issues before it." *Id.*

In the matter before this court, there has been no finding by any court that Alaska cannot provide an unbiased trier of fact and appellate court to consider the Produc-

ers' federal constitutional claims. The Producers have not presented to the state courts their claim that all Alaskan judges and prospective jurors are biased because of a substantial pecuniary interest in the outcome of the pending proceedings in *Hess.* The simple fact that the Producers claim that there is no competent court in Alaska to preside over the injunctive and declaratory relief action does not demonstrate that Alaska's disqualification procedures are inadequate to resolve the issue of bias. In *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), the Supreme Court observed:

> [W]e have repeatedly rejected the argument that a constitutional attack on state procedures themselves 'automatically vitiates the adequacy of those procedures for purposes of the *Younger–Huffman* line of cases.'

*Id.* at 628, 106 S.Ct. at 2723–2724 (citation omitted).

In *Flangas v. State Bar of Nevada,* 655 F.2d 946 (9th Cir.1981), the appellant obtained an injunction from the District Court of Nevada to bar the remaining unrecused judges of the Supreme Court of Nevada from hearing disciplinary proceedings against an attorney based on affidavits alleging that bias against him by the present members of the court would also taint any substitute judges from the trial court. *Id.* at 947–48. We reversed the order granting the injunction. We distinguished *Gibson* on the ground that the failure of the appellant to utilize Nevada's disqualification procedures makes it impossible for us to determine whether the factual allegations of pervasive bias were true. *Id.* at 950. We held that "Flangas may not simply ignore the disqualification procedures based upon his perception that his chances of success in disqualifying the biased judges 'are not auspicious.' " *Id.* (citation omitted). We also noted in *Flangas* that "[t]here is no indication in *Gibson* that there was a statutory procedure for disqualification of the biased Board members." *Id.*

In Alaska, judges may be challenged for cause upon a showing of financial interest in the matter. (Alaska Statute 22.20.020.) At such a proceeding, the Producers can mount a challenge to the impartiality of the Alaska judges by attempting to show that each of them has a *substantial* pecuniary interest in the outcome of the *Hess* matter. We cannot determine from the present record whether this matter comes within the *Gibson* exception to *Younger* abstention. In *Gibson,* a decision to revoke the licenses of all optometrists employed by a business establishment would have reduced competition by almost fifty percent. Because all Board members were in private practice, revocation would mean that it was possible that each Board member could almost double his income through fees obtained from former patients of the employee-optometrists. Here, the Producers argue that a judgment for Alaska would ultimately increase a qualified resident's dividend from the permanent fund by $70 a year. No evidence has been presented, however, that supports this figure. Assuming that it is accurate, we do not have sufficient facts before us to determine whether an increase of $70 in dividends as a result of a favorable judgment for the state in *Hess* would constitute a substantial financial interest compelling disqualification for cause. An evidentiary hearing will also inform a reviewing court whether all Alaska judges and jurors have applied for permanent fund dividends or whether, in order to provide a forum for the trial of this matter, any are willing to waive such benefits.

The Producers' failure to raise their claim of bias before the Alaska courts has denied that state's judges the opportunity to determine whether they must decline to hear this matter because they have a substantial interest in the outcome of this matter. In *Partington v. Gedan,* 870 F.2d 464 (9th Cir.1989), we stated that when a party " 'has not attempted to present his federal claims in related state court proceedings, [we will] assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.' " *Id.* at 472 (quoting *Pennzoil Co.*

*v. Texaco, Inc.*, 481 U.S. 1, 15, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (1987)). Here, a prompt due process challenge in the Alaska trial court may result in a factual determination that each Alaska judge and juror is not competent to hear this matter. Such a ruling would eliminate the federal constitutional claim without federal court interference and avoid a needless conflict in this nation's dual court system.

In addition, the Producers have failed to meet their burden of showing that the Alaskan state courts cannot provide a fair tribunal to hear their federal constitutional claims. *See id.* (a litigant bears the burden of showing "that state procedural law bar[s] presentation of [his] claims") (citation omitted). Instead, the Producers have bypassed the Alaska court system on the sensitive issue of its ability to provide a fair and impartial trial in this matter. As a result, critical and dispositive factual questions remain unresolved.

We agree with the explanation by the Eighth Circuit of its disposition of an appeal regarding a similar claim of bias:

> The difficulty here is that the bias claim, unless first presented to the state court, does not reach constitutional ripeness. If requested to do so, some state supreme court justices might well rule under the record presented to them that they should step aside and allow others to be designated in their place. If some recuse themselves, and we in no way suggest that they should or shouldn't, this would obviate the necessity for any court to pass on the federal constitutionality claims. Thus, we rule the constitutional issues are not ripe for decision since all state issues have not been presented to the state court.

*Peterson v. Sheran*, 635 F.2d 1335, 1341 (8th Cir.1980) (citation omitted).

The district court did not err in determining that the Producers' claim of bias in the Alaska court system cannot be resolved until a factual presentation demonstrating bias is made before the state trial judge.

The Producers claim that the failure of the district court to decide whether an injunction should issue on ripeness grounds creates a hardship for them. No showing has been made that the Producers will suffer any hardship by presenting to the state evidence, if any exists, that the Alaskan judges and potential jurors have a substantial pecuniary interest in the outcome of the *Hess* matter. The Producers argue that "[i]f the state is constitutionally required to seek relief in an alternative forum, that determination should be made at the earliest opportunity to prevent as much needless delay and wasted pretrial and trial preparation as possible." Brief for Appellants at 12. This is a surprising argument for the Producers to assert. They have had several years to present a disqualification motion in the state court regarding the competency of any Alaska judge to try the *Hess* matter. They have not done so. Any injury suffered by the delay in determining the Producers' bias claim has been self-inflicted. The Producers suggest that if they prevail on their disqualification theory, this matter can be tried in an "alternative forum." If so, no time has been wasted in trial preparation.

We are persuaded from our independent review of the meagre record before us, that the question of the capacity of the State of Alaska to provide a fair and impartial trial and appellate review in the *Hess* matter is not ripe. Until a proper motion for disqualification is made in the state court, the disputed factual questions concerning the alleged bias of all Alaska judges and jurors cannot be reviewed by any federal court.

In dismissing this matter without prejudice, the district court issued a challenge to the State of Alaska "to provide a forum which will ensure a fair trial before an unbiased judge and unbiased jurors" within a reasonable time. The district court invited the Producers "to re-open this federal case" if the State Officials fail to provide an unbiased forum within a reasonable time. We applaud the district court's wise resolution of a very delicate test of the joint responsibility of state and federal courts to provide every person with due process.

## VI

In their cross-appeal, the State Officials contend that the district court should have dismissed this matter pursuant to the doctrine of *Younger v. Harris.* We need not address the merits of this issue because we have determined that the district court properly dismissed the federal constitutional issue raised in this matter because it is not ripe for review.

## VII

The district court's order denying the motion to dismiss pursuant to the Eleventh Amendment is Affirmed. The order dismissing this matter because it is not ripe is Affirmed.