**EXXON CORPORATION, Plaintiff–Appellant–Cross–Appellee,**

v.

**Harold C. HEINZE; Charles E. Cole, Attorney General for the State of Alaska; Ronald Swanson, Director of the Division of Lands; James E. Eason, Director of the Division of Oil and Gas, Defendants–Appellees–Cross–Appellants.**

Nos. 92–35266, 92–35323.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 1993.

Decided Aug. 17, 1994.

---

Thomas Gibbs Gee and David D. Sterling, Baker & Botts, Houston, TX; Carl J.D. Bauman and Joseph R.D. Loescher, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, AK, for plaintiff-appellant-cross-appellee.

Bruce M. Botelho, Deputy Attorney General, Juneau, AK; and Wilson L. Condon, Deborah L. Williams, and Katheryn Bradley, Condon, Partnow & Sharrock, Anchorage, AK, for defendants-appellees-cross-appellants.

Before: WRIGHT, GOODWIN, and HUG, Circuit Judges.

GOODWIN, Circuit Judge:

Exxon Corporation ("Exxon")[1] appeals an order dismissing its 42 U.S.C. § 1983 lawsuit and denying its prayer to enjoin certain Alaska state court litigation over state oil and gas royalties. Exxon contends that the state court litigation violates its due process right to an unbiased forum. Because a partial settlement has substantially changed the posture of the case, and because the factual record is now insufficient to review Exxon's claims on their merits, we dismiss for lack of ripeness, vacating the district court's order.

## I.

In 1977, the State of Alaska filed a state court action against Exxon and eighteen other companies producing gas and oil on Alaska's North Slope ("the producers"). *See Alaska v. Amerada Hess Corp. et al,* Civil No. IJU–77–847 (hereinafter "the *ANS Royalty Litigation*"). The State sought a declaration of its rights under certain mineral leases which require the producers to pay

---

1. Chevron U.S.A., Inc. ("Chevron") was originally a coparty to Exxon's appeal; however, Chevron and Alaska settled, agreeing to dismiss Chevron's appeal, No. 92–35389, and to dismiss Chevron as a party to the State's cross-appeal, No. 92–35323. For convenience, we refer to Exxon as the sole appellant and cross-appellee throughout.

royalties on the gas and oil they extract from state lands.

In 1983, the State amended its complaint to add a claim for underpayment of past royalties, alleging that the producers had systematically underestimated the value of certain gas and oil. The producers counterclaimed for overpayment of royalties. The parties agreed to sever the gas royalty and other gas claims from the oil royalty claims and to litigate the oil royalty claims first.

In 1987, after extensive discovery on the oil royalty claims, several producers, including Exxon, filed suit in federal court, contending that the pending *ANS Royalty Litigation* violated their due process rights and requesting injunctive and declaratory relief under 42 U.S.C. § 1983. *Standard Alaska Production Co. v. Schaible*, No. 87–621 (D.Alaska, Nov. 2, 1987). The complaint alleged that the outcome of the *ANS Royalty Litigation* would substantially affect the Alaska Permanent Fund, and, consequently, the annual Permanent Fund dividends Alaska residents receive each year.[2] Because Alaska state judges and potential jurors are eligible to receive Permanent Fund dividends, the producers argued, they had a financial interest in the case, rendering them unconstitutionally biased.

Then–District Judge Kleinfeld, an Alaska state resident, recused himself from the federal case, agreeing that one might question the impartiality of a judge who receives Alaska Permanent Fund dividends, but expressly declining to reach the due process issue or rule on the fairness of the state court forum. R.T. March 8, 1988. The Chief Judge of the Ninth Circuit then appointed Judge Belloni, a non-Alaskan, to hear the case.

Judge Belloni ultimately dismissed the producers' § 1983 complaint without prejudice, rejecting the State's Eleventh Amendment defense, but holding that the controversy was not ripe for federal review because the producers had not raised the bias issue in a state court motion to disqualify. Judge Belloni challenged the State to provide a fair forum, and invited the producers "to re-open this federal case" if "the State Officials fail to provide an unbiased forum within a reasonable time." *Standard Alaska Prod. Co. v. Schraible*, No. 87–521, Unpublished Opinion at 7 (D.Alaska June 20, 1988). We affirmed, agreeing that "[u]ntil a proper motion for disqualification is made in the state court, the disputed factual questions concerning the alleged bias of all Alaska judges and jurors cannot be reviewed by any federal court." *Standard Alaska Prod. Co. v. Schaible*, 874 F.2d 624, 630 (9th Cir.1989), *cert. denied,* 495 U.S. 904, 110 S.Ct. 1923, 109 L.Ed.2d 287 (1990).

After we decided *Schaible*, the Alaska legislature amended the Permanent Fund dividend legislation to provide that "income earned on money awarded after trial" in the *ANS Royalty Litigation* would "not [be] available for distribution to the dividend fund." Alaska Stat. § 43.23.045(b) (1989) (repealed 1991). In addition, the Alaska Supreme Court amended Alaska Rule of Civil Procedure 47(c) to provide that an Alaska juror's eligibility to receive Permanent Fund dividends did not constitute grounds for challenging the juror for cause.[3]

After the Supreme Court denied certiorari, *Schaible*, 495 U.S. 904, 110 S.Ct. 1923, 109 L.Ed.2d 287 (1990), and the state court im-

---

**2.** The Alaska State Constitution requires state administrators to place 25% of all state oil and gas royalties in the Alaska Permanent Fund which is used only for income-producing investments. Alaska Const. Art. IX § 15. Under the Permanent Fund Dividend Program, enacted in 1982, the State pays Alaska residents approximately 50% of the income received each year from these investments. Alaska Stat. §§ 43.23.-045(b), 37.13.140. Each person who has resided in Alaska for a year or more—and thus all Alaska state judges, potential jurors, and their family members—are eligible to receive these payments or Permanent Fund dividends. In fact, since Alaska judges must have resided in Alaska for

five years and Alaska jurors are selected from a list of Permanent Fund recipients, *see* Alaska Stat. § 09.20.050(b), jurors and judges are, by definition, eligible to receive Permanent Fund dividends. Between 1988 and 1992, the annual Permanent Fund dividend paid to each resident ranged from $826.90 to $952.63, or approximately $3,600 for a family of four.

**3.** The amended rule allows challenges for cause when the juror "has a financial interest, other than that of a taxpayer or a permanent fund dividend recipient in the outcome of the case." Alaska R.Civ.P. 47(c)(12) (1989).

posed a deadline for filing a motion to disqualify, Exxon moved to disqualify Alaska Superior Court Judge Carpeneti, who was presiding over the state court litigation.[4] Exxon argued that the 1989 amendment had not cured the bias problem because it did not address: (1) payments received pursuant to a declaratory judgment; (2) payments received as a result of a settlement or summary judgment; or (3) payments received as a result of royalty-in-kind adjustment clauses. Judge Carpeneti issued a "Notice of Intention to Grant Motion for Disqualification," concluding that judges who receive Permanent Fund dividends have a "direct financial interest or another interest which strongly resembles a direct interest in the outcome of this case," and ruling that the 1989 amendments had not eliminated that interest. *In re ANS Royalty,* No. IJU–77–847, Order No. 91–9 at 9 (Sup.Ct. Alaska March 14, 1991). Judge Carpeneti also found that the "Rule of Necessity" did not apply. *Id.* He gave the state seventy days to remedy the bias problem.

In response, in May 1991, the Alaska legislature again amended Alaska Stat. § 43.23.-045, replacing the 1989 amendment with an amendment requiring any award received as a result of the *ANS Royalty Litigation* (including royalty-in-kind adjustments from third parties and interest earned on such funds) to be deposited into the Permanent Fund principal and not made available for distribution as dividends. Alaska Stat. § 43.-23.045(e) (1991) (current version at Alaska Stat. § 37.13.145(d) (1992)).[5] The legislature also enacted a section providing that the amendment would be automatically repealed if the Alaska Supreme Court held that eligibility to receive Permanent Fund dividends under the unamended statute would not disqualify a judge or juror from hearing the *ANS Royalty Litigation.* Alaska Stat. § 43.-23.045(e) (1991) (current version at Alaska Stat. § 37.13.145(d) (1992)).

Judge Carpeneti ruled that these amendments cured the bias problem and denied Exxon's motion to disqualify. Exxon filed a motion to reconsider, arguing that the newest amendments did not eliminate the bias problem because they did not address the producers' counterclaims and because the repeal provision "reinforced" each Alaskan's interest. Judge Carpeneti denied the motion to reconsider, ruling that the producers had waived any challenge based on the counterclaims and rejecting Exxon's reliance on the repeal provision on its merits. A second superior court judge affirmed, and the Alaska Supreme Court summarily denied Exxon's petition for review and motion for an expedited appeal. *BP Exploration v. Alaska,* No. S–4654, S–4662, S–4689 (Alaska filed Aug. 23, 1991).

Exxon and Chevron then filed the instant § 1983 action in federal court, again seeking to enjoin the *ANS Royalty Litigation.* Exxon moved to disqualify Judge Singleton, the Alaska District Judge assigned to the federal case. Judge Singleton denied Exxon's motion to disqualify, ruling that a citizen's eligibility to receive Permanent Fund dividends is a "bare expectancy," not a financial interest, and noting that even if justification for recusal existed, the Rule of Necessity might require him to hear the case. *Exxon Corp. v. Heinze,* 792 F.Supp. 72, 76 (D.Alaska 1992) (citing *United States v. Will,* 449 U.S. 200, 212–16, 101 S.Ct. 471, 479–81, 66 L.Ed.2d 392 (1980)). Chief Judge Holland, reviewing Judge Singleton's ruling pursuant to 28 U.S.C. § 144, affirmed. *Exxon Corp. v. Heinze,* 792 F.Supp. 77, 79 (D.Alaska 1992).

Judge Singleton then denied the producers' motion for a preliminary injunction and

---

**4.** Exxon contends that this motion was based exclusively on state law and argues that it expressly reserved its "right" to have federal courts decide federal constitutional issues. Appellants' Br. at 14 n. 6 (citing *England v. Louisiana State Bd. of Med. Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964)).

**5.** The amended statute provides that
... income earned on money awarded in or received as a result of [the *ANS Royalty Litiga-*

*tion* ], including settlement, summary judgment, or adjustment to a royalty-in-kind contract that is tied to the outcome of this case, or interest earned on the money, or on the earnings of the money shall be treated in the same manner as other income of the Alaska permanent fund, except that it is not available for distribution to the dividend fund, and shall be annually deposited into the principal of the Alaska permanent fund.

dismissed the complaint with prejudice, relying on the Rule of Necessity. R.T. March 12, 1992 at 17. Exxon and Chevron appealed. Thereafter, in April 1992, Chevron and Exxon settled the oil royalty claims and counterclaims. The severed gas claims and counterclaims remain.

## II.

■ Both parties agree that the posture of this case has changed significantly since Judge Singleton dismissed it. Both parties, however, urge us to reexamine Judge Singleton's orders in light of the facts as they then existed. We decline to do so. Because of the settlement, the correctness of Judge Singleton's rulings, on the facts as they then existed, is moot. *Northern Alaska Envtl. Ctr. v. Hodel,* 803 F.2d 466, 469 (9th Cir. 1986). We will not issue an advisory opinion on the merits of Judge Singleton's various orders regarding the settled oil claims.

■ However, Exxon urges that its appeal is not entirely moot, as the severed gas claims and counterclaims remain. It asks us to decide if the same bias problems apply to the remaining claims and notes that Judge Singleton's dismissal with prejudice may preclude it from returning to federal court. Exxon also emphasizes that litigation before financially interested judges and jurors raises fundamental issues of due process, even when the judges' financial interest is relatively small. *See Connally v. Georgia,* 429 U.S. 245, 251, 97 S.Ct. 546, 549, 50 L.Ed.2d 444 (1977) (paying magistrates a $5 fee for granting a search warrant application, but nothing for denying warrant applications, violates due process); *Tumey v. Ohio,* 273 U.S. 510, 523, 532, 47 S.Ct. 437, 441, 444, 71 L.Ed. 749 (1927) (paying adjudicator $12 per conviction, but nothing for acquittals, violates due process).

■ We agree that "the Due Process Clause entitles a person to an impartial and disinterested tribunal," *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 242, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980), and that "[a] fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955).[6] Moreover, like the more stringent federal judges' disqualification statute, 28 U.S.C. § 455, the Constitution is concerned not only with actual bias but also with "the appearance of justice." *Id.* Thus, the question is not whether the Alaska judges and jurors are actually biased or even whether they "would do their very best to weigh the scales of justice equally between contending parties," *Id.,* but whether the alleged pecuniary interest is sufficiently "direct, personal, [and] substantial" that it "would offer a possible temptation to the average man." *Tumey,* 273 U.S. at 523, 532, 47 S.Ct. at 441, 444.[7] Regardless of his personal integrity, "no man can be the judge in his own case [or] try cases where he has an interest in the outcome." *In re Murchison,* 349 U.S. at 136, 75 S.Ct. at 625.

■ However, as Alaska emphasizes, this case also implicates other serious issues, such as a state's sovereign interest in its courts, the need to prevent the federal system from being used as a strategic forum for delay, and litigants' interest in the speedy resolution of cases. Federal courts have long hesitated to interfere with on-going state litigation, and have repeatedly recognized the dangers of doing so. *See, e.g., Younger v. Harris,* 401 U.S. 37, 43, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971). Given the disruptive effect of allowing parties to transform every challenge to a state tribunal into a federal due process claim, we will not lightly interfere with pending state litigation. *Schaible,* 874 F.2d at 629.

6. *See also Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 822, 106 S.Ct. 1580, 1585, 89 L.Ed.2d 823 (1986); *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975) (The "probability of actual bias on the part of a judge or decisionmaker is too high to be constitutionally tolerable" when "the adjudicator has a pecuniary interest in the outcome."); *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972).

7. *But see In re New Mexico Natural Gas Antitrust Litigation,* 620 F.2d 794 (10th Cir.1980) (reversing judge's decision to recuse himself from a case which might reduce state residents' utility bills); *In re Virginia Elec. & Power Co.,* 539 F.2d 357 (4th Cir.1976) (same).

Balancing these interests, and examining the case as it currently exists, we conclude that Exxon's due process claim is not ripe for federal review. *See Abbott Lab. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Whether a dispute is ripe depends on "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149, 87 S.Ct. at 1515–16; *Assinboine & Souix Tribes of the Fort Peck Indian Reservation v. Bd. of Oil & Gas,* 792 F.2d 782, 789 (9th Cir.1986). A claim is "fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Schaible,* 874 F.2d at 627.

Here, Exxon's bias claims require further factual development. The parties have filed no pleadings and conducted only limited discovery on the remaining gas claims and counterclaims. Without any information on these claims' value or their potential impact, if any, on Permanent Fund dividends, we cannot weigh intelligently the potential bias of Alaska judges and jurors or determine whether their alleged interest has "sufficient substance to disqualify them, given the context in which this case arose." *Gibson,* 411 U.S. at 579, 93 S.Ct. at 1698.

Moreover, Exxon concedes that the settlement and Alaska's curative legislation have eliminated much of the bias problem. It argues that bias remains (1) because the gas counterclaims might reduce the funds available for dividend distribution and (2) because the repeal provision implies that State litigation proceeds might ultimately be distributed as dividends and has a subjective impact on jurors.

However, on the counterclaims, Exxon has shown only that the curative legislation does not mention the counterclaims by name. It has not shown that state courts will interpret the law in such a way that the counterclaims will actually affect the Permanent Fund dividends. State courts might, for example, rule that, any recovery on the counterclaims will simply reduce the State's recovery on other claims, such as the settled oil claims. We cannot tell, based on the record, whether state courts will interpret state law so as to eliminate the counterclaims' potential impact on Permanent Fund dividends. Nor can we determine whether any of Exxon's counterclaims have merit: The State argues that, on some claims, Exxon has paid no royalties, and thus cannot counterclaim for overpayment of royalties. Such issues require further factual development.

Exxon's arguments about jurors' subjective perceptions of the Fund or lack of understanding of the curative legislation do not apply to ongoing discovery and will have no impact unless and until the case goes before a jury. Exxon concedes that Alaska judges will understand the curative legislation, and will not be confused about the litigation's capacity to increase their dividends. Moreover, as the State emphasizes, any "subjective" juror bias might be addressed by a properly conducted voir dire. *Los Angeles Memorial Coliseum Comm'n v. NFL,* 726 F.2d 1381, 1400 (9th Cir.), *cert. denied,* 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984).

Exxon has not shown that withholding review will cause it substantial hardship. *Abbott Lab.,* 387 U.S. at 148, 87 S.Ct. at 155. Extensive discovery must occur before the case is ready for trial. Exxon does not allege that any remaining bias problems affect Alaska judges' fitness to rule on discovery issues and does not object to Alaska judges ruling on discovery issues. In fact, Exxon emphasizes that, if necessary, the case can be removed to another forum after discovery is complete.

Because the parties have not yet developed a factual record on the value of the remaining claims or their potential impact (if any) on Alaska Permanent Fund dividends, we cannot evaluate Exxon's bias claims on their merits. Exxon does not object to state judges presiding over discovery, and many of its arguments pertain to *jurors,* not judges. This case may never go to a jury, and, if it does, the State may be able to remedy any problems of subjective juror bias with a properly conducted voir dire. Thus, the case is not ripe for review.

We express no opinion on the merits of the parties' arguments regarding abstention and

the Rule of Necessity. The district court order dismissing Exxon's complaint with prejudice is VACATED, and the case is REMANDED to the district court to dismiss without prejudice.

VACATED and REMANDED, neither party to recover costs on appeal.

