Robin HEITZ, on behalf of herself and all those similarly situated, Appellants,

v.

STATE of Alaska, DEPARTMENT OF HEALTH AND SOCIAL SERVICES, Karleen Jackson, in her official capacity as Commissioner of the Department, Office of Children's Services, and Tammy Sandoval, in her official capacity as Deputy Commissioner of the Office of Children's Services, Appellees.

No. S–13036.

Supreme Court of Alaska.

Aug. 28, 2009.

James J. Davis, Jr., Goriune Dudukgian, Ryan Fortson, Northern Justice Project, Anchorage, for Appellants.

John W. Erickson, Assistant Attorney General, Anchorage, Talis J. Colberg, Attorney General, Juneau, for Appellees.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

Alleged prior overpayments of foster care reimbursements were recouped by the state through a deduction from a much-later monthly foster care reimbursement payment. The foster parent contends the state violated her due process rights by not providing adequate notice or opportunity to be heard before the recoupment. The superior court held that the due process clause did not protect the foster parent's interest in receiving foster care reimbursement payments and ruled in favor of the state. Because a foster parent has a property interest in state foster care reimbursement payments that may not be deprived without due process protections, we reverse the superior court's ruling and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

### A. Facts

Robin Heitz is a licensed foster parent who has housed and cared for foster children since 2004. Heitz receives a monthly payment from the State of Alaska, Department of Health and Social Services, Office of Children's Services (OCS) to help maintain foster children in her care.[1] According to OCS's handbook for foster families, foster parents receive reimbursement after submitting billing documentation for the days during which the foster parent provided care in the previous month.

In 2005 OCS placed a foster child named Timothy[2] in Heitz's care. Timothy occasionally ran away from Heitz's home, and Heitz notified OCS of each occurrence. Timothy stopped living with Heitz in December 2005.

In September 2006 Heitz received a letter from an OCS social worker informing her that OCS had audited Timothy's case and found "there was an overpayment of foster care while he was placed in [Heitz's] home." The letter stated:

> Primarily this occurred when [Timothy] was (1) in Cornerstone [an emergency shelter], or (2) on the run from Cornerstone, or (3) in the Johnson Youth Center following placement and/or run from Cornerstone. I had continued your foster care payment during times I should have ceased payment.
>
> The time period where these discrepancies (overpayments) occurred was roughly 9/13/05 to 1/03/06. I anticipate when the Financial Management Services has completed their audit of foster care payments for [Timothy], they will notify you of the amount of the overpayment and repayment process.

In November 2006 Heitz received her monthly foster care check for the five foster children living with her the previous month. Heitz had expected the payment to be

$2,438.46; instead, OCS made a number of deductions from that sum so that Heitz's net payment for the month was $491.42. Heitz presumed "[t]hese 'deductions' were apparently the monies the State was deducting from [her] as a result of [Timothy] running away from [her] back in 2005."

OCS did not send Heitz a written notice before recouping these funds. OCS concedes it erred in failing to send Heitz any notice and contends that its standard procedure is to send foster parents a letter explaining a proposed recoupment before actually recouping funds.

### B. Proceedings

Heitz filed a class action complaint for declaratory and injunctive relief. She requested the court: (1) declare that foster parents' interest in receiving foster care payments is protected by due process; (2) enjoin OCS from reducing or terminating foster care reimbursements without first providing foster parents "due process compliant notices and due process compliant hearings"; (3) order OCS to provide such notices and hearings to foster parents whose reimbursements were reduced or terminated after November 20, 2004; and (4) order OCS to reimburse Heitz the funds it recouped from her until she receives constitutionally adequate notice and a hearing to contest the recoupment.

The superior court certified a class consisting of all foster parents in the state who had received foster care reimbursements since November 20, 2004. Heitz filed a motion for summary judgment. OCS opposed Heitz's motion, but did not move for summary judgment in its own favor. At oral argument on the motion, OCS argued for the first time that existing grievance procedures set forth at 7AAC 54.205–.240 provide foster parents due process. The superior court requested additional briefing on this new argument. In an appendix to her supplemental brief Heitz observed that OCS had proposed amending

---

1. *See* AS 47.14.100(b) (authorizing OCS to "pay the costs of maintenance that are necessary to assure adequate care of the [foster] child"); 7 Alaska Administrative Code (AAC) 53.020 (2005) ("The department will provide payment for a child placed in foster care by the department unless another source of payment is available for the child's care.").

2. A pseudonym is used to protect the child's identity.

regulations to apply to foster care payment disputes the same notice and hearing requirements that currently apply to disputes over Medicaid, food stamps, temporary assistance payments, and other state benefit programs.[3] OCS responded that it had declined to adopt these proposed regulations because it believed foster parents "do not possess a protected property interest in foster care payments, and as such, adoption of the regulations is not necessary."

The superior court denied Heitz's motion for summary judgment, ruling that although "the legal authority overwhelmingly supports the notion that foster care *children* have an interest in foster care payments sufficient to warrant due process protections ... any interest that foster care *parents* have in foster care subsidies is minimal and insufficient to trigger due process protection under the test annunciated by the United States Supreme Court in *[Mathews] v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)." (Emphasis in original.) Although the superior court did not address the adequacy of the recoupment notices sent to foster parents, it concluded that foster parents have no right to a hearing to contest recoupment because the burden on OCS "cannot be justified given the interest affected."

Heitz appeals.

## III. STANDARD OF REVIEW

 "A grant of summary judgment is reviewed de novo. We will affirm 'if the record contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'"[4]

Whether the due process clause protects foster parents' interest in receiving foster care reimbursement payments and whether OCS's notice and hearing procedures comply with due process are "question[s] of constitutional law which we review de novo, adopting the most persuasive rule of law in light of precedent, reason and policy."[5]

## IV. DISCUSSION

### A. Foster Parents Have a Protected Property Interest in Reimbursement Payments for Foster Children's Care.

 "Due process of law requires that before valuable property rights can be taken directly or infringed upon by governmental action, there must be notice and an opportunity to be heard. When a party raises a due process claim, we first must determine whether there is a deprivation of an individual interest of sufficient importance to warrant constitutional protection."[6] In *City of Homer v. Campbell*[7] we quoted approvingly the U.S. Supreme Court's explanation:

The hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except for cause. Once that characteristic is found, the types of interests protected as property are varied and, as often as not, intangible, relating to the whole domain of social and economic fact.[8]

 OCS reimburses licensed foster parents for "the costs of maintenance that are necessary to assure adequate care" of foster children in their custody.[9] Reimbursement

3. *See* 7 AAC 49.010–.900.

4. *Wilson v. MacDonald*, 168 P.3d 887, 888 (Alaska 2007) (internal citation omitted) (quoting *DeNardo v. Bax*, 147 P.3d 672, 676–77 (Alaska 2006)).

5. *Baker v. State, Dep't of Health & Soc. Servs.*, 191 P.3d 1005, 1009 (Alaska 2008); *see also Wilkerson v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 993 P.2d 1018, 1021 (Alaska 1999).

6. *Bostic v. State, Dep't of Revenue, Child Support Enforcement Div.*, 968 P.2d 564, 568 (Alaska 1998) (quoting *Frontier Saloon, Inc. v. Alcoholic*

*Beverage Control Bd.*, 524 P.2d 657, 659 (Alaska 1974) and *Herscher v. State, Dep't of Commerce*, 568 P.2d 996, 1002 (Alaska 1977)) (internal quotation marks omitted).

7. 719 P.2d 683, 684–85 (Alaska 1986).

8. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (internal quotation marks omitted).

9. AS 47.14.100(b); 7 AAC 53.020; Dep't of Health & Soc. Servs., Office of Children's Servs., Alaska's Res. Family Handbook 27 (2009) ("Reimbursements are intended to offset costs you have already incurred, which means you submit your

payments are made at a standard rate [10] multiplied by the number of days of care provided in the previous month.[11] If a licensed foster parent provides care for a foster child, the parent is statutorily entitled to receive a reimbursement payment. Foster care maintenance reimbursements therefore satisfy the criterion for a protected property interest we adopted in *Campbell:* they are "an individual entitlement grounded in state law, which cannot be removed except for cause." [12] Other courts have concluded that "foster care benefits ... are a species of property that is protected under the Constitution." [13]

OCS contends that the property interest in these payments belongs only to foster children, not foster parents. Citing *Wilkerson v. State* for the proposition that foster care maintenance payments are "not intended to be a source of income to provide foster parents with the basic necessities of life," [14] OCS argues that a foster parent has no legitimate property interest in these payments.

*Wilkerson* does not control our decision here because it involved a different property interest than the one asserted by Heitz. In *Wilkerson* OCS denied a foster care license to an applicant who had been charged with a felony in the preceding ten years; the applicant argued he was denied due process because he did not have the opportunity to be heard regarding his criminal record.[15] We noted the applicant's property interest in the opportunity to provide foster care was "marginal"; because foster care payments "do no

more than cover the foster child's own costs," denial of the opportunity to provide foster care does not deny the applicant any economic benefit.[16]

By contrast a person like Heitz, who actually cares for foster children, receives foster care payments because prior expenses are being reimbursed. If OCS erroneously denies reimbursement payments to a parent who already has provided foster care, that parent suffers a net loss of funds, unlike someone denied the *opportunity* to provide foster care. We therefore reject OCS's argument and conclude that a foster parent's interest in receiving foster care reimbursement payments is a property interest protected by the due process clause.[17]

## B. When OCS Recoups Alleged Prior Overpayments from Foster Parents, It Must Provide Them with Notice and an Opportunity To Be Heard.

"[B]efore property rights can be taken or infringed upon by government action, there must be notice of the action proposed to be taken and an opportunity to be heard." [18] "Due process requires that benefit recipients be given 'timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend' before their benefits are reduced or terminated, in order to afford them protection from 'agency error and arbitrariness.' " [19] Because foster parents have a protected property interest in receiving foster care reimbursement payments for their

---

billing for the days for which you have already provided care for [*sic*] in the previous month.").

10. 7 AAC 53.030(a).

11. 7 AAC 53.080(a).

12. 719 P.2d at 684–85 (quoting *Logan,* 455 U.S. at 430, 102 S.Ct. 1148) (internal quotation marks omitted).

13. *Youakim v. McDonald,* 71 F.3d 1274, 1288 (7th Cir.1995) ("Perceiving no distinction" between food stamps, welfare, or disability benefits and foster care subsidies); *see also Sockwell v. Maloney,* 431 F.Supp. 1006, 1012 (D.Conn.1976) ("[O]nce a child is found in need of foster care and is placed in a foster home, the child acquires a property interest in foster care payments protected by the due process clause of the Fourteenth Amendment.").

14. 993 P.2d at 1023.

15. *Id.* at 1020, 1025.

16. *Id.* at 1023–24.

17. OCS also argues that even if a foster parent has a protected property interest in reimbursement payments, the parent has no protected interest in *overpayments.* Since the purpose of administrative review is to determine whether there has been an overpayment, the argument lacks merit.

18. *Campbell,* 719 P.2d at 685 (citing *Goldberg,* 397 U.S. at 267–68, 90 S.Ct. 1011).

19. *Allen v. State, Dep't of Health & Soc. Servs., Div. of Pub. Assistance,* 203 P.3d 1155, 1167 (Alaska 2009) (quoting *Baker,* 191 P.3d at 1009).

previous care of foster children, we hold that OCS must provide notice of its intent to recoup funds and an opportunity to contest its decision before a recoupment occurs.[20]

■ In determining whether notice of proposed agency action is adequate, we apply the balancing test articulated by the U.S. Supreme Court in *Mathews v. Eldridge*.[21] The test balances:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail.[22]

■ The amount of information required in a notice depends partly on the importance of the individual interest at stake.[23] We previously have held that people receiving welfare benefits or "personal care attendant" services (assistance with daily functions like eating and bathing provided to disabled, low-income individuals) have a "brutal need" for those benefits.[24] Foster parents' need for reimbursement may not be as pressing in all cases, but a failure to receive reimbursement payments may hinder their ability to provide for the foster children in their care. Their interest in these payments is therefore substantial.

■ We have held that " 'due process requires an explanation of the *specific* reasons' "[25] for reducing or terminating benefits on an individual basis, and that the state must "show how and why it determined that a reduction in [benefits] was in order."[26] "Due-process-compliant notices are designed to protect recipients from erroneous deprivation of benefits by allowing them to assess whether or not the agency's calculations are accurate .... [S]uch notices should provide sufficient information to allow recipients to detect and challenge mistakes."[27]

In *Allen v. State*, we held that when the state informed a food stamp beneficiary of a planned recoupment of benefits, a notice showing the amount the beneficiary had received, the amount she was entitled to receive, and the difference between the two figures was inadequate because the simple calculation "would not allow her to detect the type of mistake that caused her overpayment problem in the first place, that is, an error in determining the amount of her true entitlement."[28] Providing the specific facts and numbers underlying OCS's recoupment calculation, as well as the legal authority for its actions, will enable a foster parent to understand whether the recoupment is justified, identify the specific facts in dispute, and resolve potential errors more easily.

We do not perceive any great burden to OCS in supplying this additional information. In *Allen* we observed that providing "more

20. Our decision applies to the procedures required in the case of recoupment only. Although the class certified below includes all foster parents in the state who have received foster care subsidies, we limit the effect of our decision to foster parents from whom OCS recoups foster care reimbursement payments. We express no opinion regarding the procedures applicable when OCS terminates monthly payments or reimburses the foster parent a lesser amount than was requested. We also express no opinion on whether due process requires providing notice to persons other than foster parents.

21. *Baker*, 191 P.3d at 1010 (citing *Mathews*, 424 U.S. at 334–45, 96 S.Ct. 893).

22. *Mathews*, 424 U.S. at 335, 96 S.Ct. 893 (internal citations omitted).

23. *Allen*, 203 P.3d at 1167.

24. *Baker*, 191 P.3d at 1010 (citing *Goldberg*, 397 U.S. at 261, 90 S.Ct. 1011).

25. *Id.* at 1011 (quoting *Schroeder v. Hegstrom*, 590 F.Supp. 121, 128 (D.Or.1984)) (emphasis added in *Baker*).

26. *Id.*

27. *Allen*, 203 P.3d at 1167–68 (citing *Ortiz v. Eichler*, 794 F.2d 889, 893 (3d Cir.1986)).

28. *Id.* at 1168. The notice and hearing procedures for disputes over food stamps at issue in *Allen* are governed by federal regulations; however, we held that when "the regulations are unclear as to precisely what information a notice must contain, due process requirements may be used to fill in the gaps." *Id.* at 1166.

detailed calculations" than the difference between the beneficiary's asserted entitlement and the amount received was not an unreasonable burden.[29] It does not seem unduly burdensome for OCS to include specific dates and figures in its letters notifying foster parents of a planned recoupment, especially in light of their interest in foster care funds and the utility of this information in resolving recoupment disputes.

 We thus conclude that OCS must provide notice to foster parents of an intended recoupment of reimbursement. Notice must include specific factual reasons and legal authority for the recoupment and must also inform the parents of their right to contest OCS's decision.[30] Because there is a factual dispute as to the content of letters OCS sends foster parents to notify them of a planned recoupment, we remand the case to the superior court to resolve this dispute and determine whether these notices comply with due process.

## V. CONCLUSION

We REMAND the case to the superior court for proceedings consistent with this opinion.

MATTHEWS, Justice, not participating.

---

**29.** *Id.* at 1168.

**30.** We do not reach any issues related to procedures to be provided for a foster parent to contest a recoupment. We note only that "due process does not require a full-scale hearing in every situation to which due process applies," *Haggblom v. City of Dillingham,* 191 P.3d 991, 995 (Alaska 2008) (quoting *Laidlaw Transit, Inc. v.*

*Anchorage Sch. Dist.,* 118 P.3d 1018, 1026 (Alaska 2005) (internal quotation marks omitted)), but that fair resolutions of disputed facts "can rarely be obtained by secret, one-sided determinations," *Campbell,* 719 P.2d at 685 (quoting *Fuentes v. Shevin,* 407 U.S. 67, 81, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (internal quotation marks omitted)).