237 P.3d 1010 (2010)
Keirsten SMART, on behalf of herself and all those similarly situated, Appellant,
v.
STATE of Alaska, DEPARTMENT OF HEALTH AND SOCIAL SERVICES, Karleen Jackson, in her official capacity as Commissioner of the Department, Division Of Health Care Services, and William Streur, in his official capacity as Deputy Commissioner of the Division, Appellees.
No. S-13438.
Supreme Court of Alaska.
August 20, 2010.
*1011 James J. Davis, Jr., Goriune Dudukgian, and Ryan Fortson, Northern Justice Project, Anchorage, for Appellant.
Megan R. Webb, Assistant Attorney General, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for Appellees.
Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

OPINION
FABE, Justice.

I. INTRODUCTION
The State of Alaska Department of Health and Social Services (DHSS) is authorized by regulation to use "statistically valid sampling methodologies" to calculate overpayments made to providers of Medicaid services who *1012 are subject to audit. DHSS created a protocol that details its auditing methodology, and an independent auditor used this protocol in the audit of Medicaid provider Keirsten Smart. At the conclusion of the audit process, DHSS sought to recoup overpayments made to Smart. Smart did not appeal the final audit results or recoupment decision to DHSS but instead brought a lawsuit in superior court, alleging that DHSS violated her due process rights and that the protocol used in her audit should have been promulgated as a regulation under the Alaska Administrative Procedure Act (APA). The superior court dismissed the lawsuit, concluding that Smart's due process challenges were barred because she had failed to exhaust her administrative remedies and that the protocol did not constitute a regulation under the APA.
Because DHSS failed as a matter of law to provide Smart with adequate notice of its recoupment decision and her right to appeal, we remand the case with instructions that the superior court order DHSS to provide Smart an opportunity to request administrative review of DHSS's recoupment decision. We also take this opportunity to affirm the superior court's holding that the protocol does not constitute a regulation and therefore need not have been promulgated under the APA.

II. FACTS AND PROCEEDINGS

A. Medicaid Auditing Procedures
As we recently explained:
The Medicaid program is "a cooperative federal-state partnership under which participating states provide federally-funded medical services to needy individuals." A state's participation in the Medicaid program is voluntary, but "once a state decides to participate, it must comply with federal statutory and regulatory requirements." Alaska participates in the Medicaid program, and DHSS promulgated regulations in 7 Alaska Administrative Code (AAC) 43 to implement and administer it.[1]
Federal law requires that states receiving Medicaid funds audit payments to Medicaid providers.[2] The Alaska Legislature enacted a law in 2003 requiring DHSS to "annually contract for independent audits of a statewide sample of all medical assistance providers in order to identify overpayments and violations of criminal statutes."[3] When overpayments are identified, DHSS must begin procedures to recoup the overpayment amount.[4] A Medicaid provider that fails to refund overpayments to DHSS is subject to sanctions, including termination from participation in the Medicaid program.[5]
In 2006 DHSS passed a regulation providing that it "may use statistically valid sampling methodologies to select Medicaid claims for review or audit and to calculate overpayment amounts to providers."[6] In promulgating this regulation under the APA, DHSS received several comments asking it to elaborate on the meaning of "statistically valid sampling methodologies." In response, DHSS stated that the "methodology is always open for inspection and conforms to industry standards. Providers are made aware of this at the beginning of the [auditing] process."
During discovery, DHSS provided Smart with a protocol governing audits (the "Protocol"). The Protocol details how auditors are to determine the universe of a Medicaid provider's claims; select sample claims from that universe; determine overall overpayments *1013 to the provider based on overpayments in the sample claims (a process known as extrapolation); and validate their procedures.

B. Audit of Keirsten Smart
Smart is a self-employed care coordinator who provides medical assistance to Medicaid-eligible individuals through a program that allows individuals who would otherwise be institutionalized to remain in their communities or their homes. In order to receive Medicaid payments from DHSS, Smart was required to sign an enrollment form in which she agreed to comply with all applicable "review and audit regulations" and "regulations relating to recoupment/recovery of overpayment." In March 2006 DHSS informed Smart that she would be subject to an audit by the independent auditor Myers and Stauffer LC, who communicated directly with Smart the following month. Neither letter discussed how Smart was selected for an audit or the statistical methodology to be used. The audit, covering the period of April 1, 2004 through March 31, 2005, included 474 Medicaid claims resulting in payments by DHSS of $102,310.
In May 2007, based on documents that Smart submitted, Myers and Stauffer issued preliminary findings identifying overpayments in the amount of $1,040 among the sample claims it reviewed. Smart sent further documentation to Myers and Stauffer explaining the Medicaid claims identified as overpayments within 30 days of receiving this letter. The firm then withdrew all but one finding of overpayment in the amount of $240. Smart had refunded the $240 payment in September 2006, early in the audit process.
On June 28, 2007, DHSS sent Smart a letter attaching a final audit report that identified the period audited, the total number of claims submitted during that period, and the total payment by DHSS; however, the letter did not explicitly state the overpayment amount that DHSS intended to recoup or even that DHSS intended to recoup money. The letter informed Smart that she could appeal the results of the final audit by submitting a written request to the commissioner of DHSS identifying the challenged audit and the basis for the challenge and including any documentation she wished the commissioner to consider. Smart did not appeal.
The attached final audit report, prepared by Myers and Stauffer, found that based on "a statistically valid extrapolation of estimated Medicaid overpayments [in the amount of $240] ... [the t]otal extrapolated overpayments for the provider for the time period April 1, 2004 to March 31, 2005 are $2,370.00." The DHSS letter and final audit report did not include a copy of the Protocol used by Myers and Stauffer.[7] Rather, the report stated that the audit was "conducted in accordance with attestation standards set forth in Government Auditing Standards (2003 Revision) ... [and t]he full text of the procedures are contained in the [DHSS] Medicaid Provider Payment Audit Program." The report also included a "Statistical Report" as an appendix that provided raw numbers from the audit and showed the basic calculations that resulted in the extrapolated overpayment amountmultiplying the sample average overpayment per claim by the total number of claims.
On August 6, 2007, DHSS sent Smart a letter demanding payment of $2,370 within 30 days of receipt of the letter. The letter stated that the assessment constituted a "final agency decision" and provided no opportunity for administrative review of the recoupment decision.

C. Proceedings
Smart filed a putative class action complaint against DHSS on September 7, 2007, which she amended several months later. She asserted two claims. First, she alleged that DHSS violated the APA by failing to promulgate its method for conducting audits of Medicaid providers as a "regulation" and that the use of that method is therefore invalid. Second, she alleged that DHSS violates *1014 the due process rights of Medicaid providers by issuing notices of recoupment decisions that do not provide the factual and legal bases for the proposed recoupment and by failing to afford providers a right to a hearing. Among other forms of relief, Smart sought disgorgement of any funds DHSS had recouped from Medicaid providers pursuant to the challenged methodology.
DHSS moved to dismiss Smart's complaint, or in the alternative for summary judgment, arguing that: (1) the lawsuit is barred by Smart's failure to exhaust her administrative remedies; (2) DHSS complied with the APA because its methodology is not a regulation subject to the APA; and (3) DHSS did not violate Smart's due process rights because it provided her with notice of its audit procedures and regulations and would have provided her with a hearing had she appealed her audit results. Smart filed an opposition to the motion to dismiss and cross-moved for summary judgment on her claims.
The superior court granted DHSS's motion to dismiss and denied Smart's cross-motion for summary judgment. It found that DHSS's auditing methodology did not constitute a regulation under the APA and that, despite there being genuine questions regarding the adequacy of DHSS's notice and appeals process, Smart waived her right to raise these issues by failing to exhaust her administrative remedies. Smart appeals.

III. STANDARD OF REVIEW
Whether a type of claim generally requires exhaustion of administrative remedies is a legal question that we review de novo.[8] We review for abuse of discretion a determination of whether a plaintiff exhausted those remedies or whether the failure to exhaust should be excused.[9] "If a court finds no effective remedy is available, it will generally be an abuse of discretion to require exhaustion of remedies."[10]
We review de novo "questions of statutory and constitutional construction ..., adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[11] This includes whether an agency's notice and hearing procedures comply with due process[12] and whether an agency action constitutes a "regulation" that must be promulgated in compliance with the APA.[13]

IV. DISCUSSION

A. DHSS Provided Defective Notice To Smart And Therefore Must Provide Her A New Opportunity To Challenge Its Recoupment Decision.
Pursuant to 7 AAC 43.1490,[14] Medicaid providers such as Smart were able to appeal the findings of a final audit and a determination of overpayment. A two-paragraph notice DHSS sent to Smart referenced this regulation and informed Smart that she had 30 days in which to appeal the results of the attached final audit report. Smart did not file an appeal. Instead, after receiving a letter from DHSS more than 30 days later demanding repayment of $2,370, she filed a lawsuit in superior court.
DHSS moved to dismiss Smart's complaint on the ground that, by failing to file an appeal to the agency, she had not properly exhausted her administrative remedies. The superior court agreed in part, concluding that Smart "was required to first exhaust her administrative remedies before filing an independent [due process] claim against" DHSS. It found that she had failed to do so and that the failure was not excused, and therefore declined to address the merits of her due *1015 process claims, although it ruled on her APA claim.
Where, as here, a regulation provides for administrative review of an agency decision, a person ordinarily must exhaust such administrative remedies before bringing an action in superior court challenging the decision.[15] We have noted that "the basic purpose of the doctrine of exhaustion of administrative remedies is `to allow an administrative agency to perform functions within its special competenceto make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies.' "[16] By permitting an agency to correct its errors and a complainant to obtain relief without judicial intervention, the administrative exhaustion requirement promotes both administrative autonomy and judicial economy.[17]
The period during which a party may seek administrative review of an agency decision, and thereby exhaust administrative remedies, commences once the party has sufficient notice to challenge the decision. To be adequate for this purpose, notice must clearly identify the proposed agency action and the party's right to seek administrative relief.[18] But to comply with due process, notice must also be "reasonably calculated, under all the circumstances, to inform interested parties of action affecting their property rights."[19] As we have held in the similar context of recoupment of overpayment to foster parents, due process requires notice of recoupment of overpayment to "include specific factual reasons and legal authority for the recoupment and [] also inform the [recipients] of their right to contest" the decision.[20]
Smart argues that DHSS's notice failed even to apprise her of how much DHSS sought to recoup and was constitutionally defective. She contends that DHSS's notice violated her due process rights by failing to inform her of: (1) why she was selected for the audit; (2) the methodology that was used for the audit; and (3) how DHSS calculated its repayment demand.
Smart received a total of six separate communications from DHSS and Myers and Stauffer. These communications failed to provide Smart with adequate and timely notice of DHSS's proposed recoupment decision before Smart's right to appeal this decision had expired. The June 28, 2007 letter informed Smart of her right to appeal within 30 days the results of the attached final audit report, but did not state that DHSS had reached a recoupment decision and intended to recoup an extrapolated overpayment amount of $2,370. The five-page audit report *1016 referenced this extrapolated amount on its final page, but nowhere in the audit report, accompanying letter, or any prior communication, did DHSS or Myers and Stauffer inform Smart that she would be responsible for an extrapolated rather than overpayment amount.[21] DHSS's first clear statement that it intended to recoup $2,370 from Smart came in a letter dated August 6, 2007, after 30 days had passed. The letter, titled "NOTICE OF MEDICAID OVERPAYMENT RECOUPMENT," explained that because Smart had failed to timely appeal her audit findings, the recoupment decision constituted a "final agency decision." Thus, Smart was not clearly informed of DHSS's proposed recoupment of $2,370 before her right to seek administrative relief had expired.
Moreover, none of the communications included the statistical methodology used by the auditor and described in the Protocol. For example, the communications did not explain how the auditor defined the universe of claims, determined the sample size, verified the sampling procedures, or extrapolated overpayments to the universe. The final audit report included an appendix disclosing the raw numbers and basic calculations used to determine the total extrapolated overpayment amount but did not explain these calculations in simple language.
When reviewed in their totality, the communications were insufficient to permit Smart to challenge DHSS's recoupment decision. DHSS failed to communicate to Smart in a timely manner the amount it sought to recoup and whether this determination was based on statistically valid sampling methodologies. As a result, Smart was unable to challenge DHSS's overpayment determination. The burden on DHSS of correcting this defective notice and complying with due process is minimal: DHSS must clearly state the calculated overpayment amount and the right to appeal in the same notice and attach the Protocol to the notice.[22] By doing so, Medicaid providers will be able to more easily "understand whether the recoupment is justified, identify the specific facts in dispute, and resolve potential errors."[23]
For the foregoing reasons, we hold that DHSS's notice to Smart did not comply with due process and did not provide even the minimal information necessary to commence the period during which Smart could seek administrative review. Smart now has the information to which she was entitled: she has been informed of the intended recoupment amount in the final DHSS notice and has obtained the Protocol through discovery.[24] Now that she has received this information, DHSS must provide her with an opportunity to challenge its recoupment decision. We therefore remand this case to the superior court with instructions to direct DHSS to provide Smart 30 days in which to request administrative review of DHSS's recoupment decision.[25]

*1017 B. The Protocol Is Not A Regulation That Needed To Be Promulgated Pursuant To The APA.
We address one additional issue that can be determined as a matter of law and would not benefit from further development at the administrative level. Smart argues that the Protocol is a regulation and that DHSS was required to comply with the APA process for adopting new regulations. The APA lays out the "minimum procedural requirements for the adoption, amendment, or repeal of administrative regulations," including notice and an opportunity for public comment on the proposed agency action.[26] The APA "is meant to reduce the risk of arbitrary application and to inform the public of regulations."[27] It is undisputed that DHSS did not promulgate the Protocol in compliance with the APA. The only question is whether the Protocol constitutes a "regulation" under the APA such that compliance was required. If it does constitute a regulation, as Smart argues, then the failure of DHSS to satisfy the procedural requirements of the APA would render its implementation of the Protocol invalid.[28]
Smart argues that the Protocol is a regulation because it is not a common-sense interpretation of the term "statistically valid sampling methodologies," but rather "involve[d] a number of unpublicized, result-driving policy decisions that should have received public input" and were unforeseeable even by a highly trained statistician. DHSS responds that the Protocol is merely the implementation of a policy decision and a "formulaic tool used by the auditor to calculate a Medicaid provider's overpayment." DHSS also argues that the Protocol does not create any new substantive requirements, as Medicaid providers are already required to retain and submit documentation upon request and return overpayments. We believe that DHSS has the better argument.
"[T]he legislature intended for the term `regulation' to encompass a variety of statements made by agencies."[29] Alaska Statute 44.62.640(a)(3) defines "regulation" broadly as:
every rule, regulation, order, or standard of general application ... adopted by a state agency to implement, interpret, or make specific the law enforced or administered by it, ... includ[ing] "manuals," "policies," "instructions," "guides to enforcement," "interpretive bulletins," "interpretations," and the like, that have the effect of rules, orders, regulations, or standards of general application ...; whether a regulation, regardless of name, is covered by this chapter depends in part on whether it affects the public or is used by the agency in dealing with the public[.]
"Although the definition of `regulation' is broad, it does not encompass every routine, predictable interpretation of a statute by an agency."[30] Because "[n]early every agency action is based, implicitly or explicitly, on an interpretation of a statute or regulation," subjecting every interpretation to the procedural requirements of the APA "would result in complete ossification of the regulatory state."[31] Thus, in Alaska Center for the Environment v. State, we rejected a plaintiff's *1018 characterization of the Office of Management and Budget's interpretation of the term "major energy facility" as a regulation that should have been promulgated pursuant to the APA.[32] We held that it was not an APA regulation but merely a "common sense interpretation" of a regulation according to its own terms that imposed no new substantive requirements nor made existing ones any more specific.[33]
DHSS's interpretation of "statistically valid sampling methodologies," like the Office of Management and Budget's interpretation of the term "major energy facility," is a "common sense interpretation" of a regulation. While formulation of the Protocol may have involved policy decisions, Smart's expert conceded that the Protocol uses a "formula [that] appears in all statistics books" to calculate the appropriate sample size. Furthermore, the method of calculating overpayments outlined in the Protocol does not impose any new substantive requirements.[34] Pursuant to statute and DHSS regulations, Medicaid providers are required to keep records, provide them to auditors, and reimburse overpayments identified in audits.[35] Finally, given the requirement that DHSS use audit methods that are statistically valid, we do not believe there is a meaningful risk that DHSS will vary its audit requirements "at whim" or based on "improper influences."[36] Any such risk is mitigated by the disclosure of the audit methodology to Medicaid providers subject to audit, as required by this opinion.
We therefore hold that the Protocol is not a regulation that must be promulgated pursuant to the APA. DHSS's properly promulgated regulation authorizing the use of "statistically valid sampling methodologies" is sufficient.

V. CONCLUSION
For the foregoing reasons, we REVERSE the superior court's dismissal of Smart's due process claims for failure to exhaust administrative remedies and REMAND this case to the superior court with instructions to direct DHSS to provide Smart 30 days in which to request review of DHSS's recoupment decision. We AFFIRM the superior court's dismissal of Smart's APA claim.
NOTES
[1] Hidden Heights Assisted Living, Inc. v. State, Dep't of Health & Soc. Servs., 222 P.3d 258, 261 (Alaska 2009) (quoting Garner v. State, Dep't of Health & Soc. Servs., Div. of Med. Assistance, 63 P.3d 264, 268 (Alaska 2003)).
[2] See 42 U.S.C. § 1396a(a)(42) (2009); 42 C.F.R. § 447.202 (2010).
[3] AS 47.05.200(a), adopted by ch. 66, § 3, SLA 2003. "Audit" is defined by regulation as "the process of obtaining competent evidentiary material about a provider through inspection, observation, inquiry, and confirmation sufficient to support a reasonable basis for determining the provider's compliance with the legal requirements of the Medicaid program." 7 AAC 160.110(i)(1).
[4] See AS 47.05.200(b).
[5] See 7 AAC 105.400(21); 7 AAC 105.410(a)(1).
[6] 7 AAC 43.1470 (repealed 2010). In February 2010 this regulation was replaced by a nearly identical regulation found at 7 AAC 160.120.
[7] The final line of the Protocol provided to Smart during discovery states: "All of the above is provided to the provider in the final audit report so that the math and assumptions can be tested." This was not true in Smart's case.
[8] State, Dep't of Revenue v. Andrade, 23 P.3d 58, 65 (Alaska 2001).
[9] Id.
[10] Hymes v. DeRamus, 222 P.3d 874, 883 (Alaska 2010).
[11] Pepper v. Routh Crabtree, APC, 219 P.3d 1017, 1020 (Alaska 2009).
[12] Heitz v. State, Dep't of Health & Soc. Servs., 215 P.3d 302, 305 (Alaska 2009).
[13] Alaska Ctr. for the Env't v. State, 80 P.3d 231, 243 (Alaska 2003).
[14] In February 2010 this regulation was replaced by a nearly identical regulation found at 7 AAC 160.130.
[15] Matanuska Elec. Ass'n, Inc. v. Chugach Elec. Ass'n, Inc., 99 P.3d 553, 560 (Alaska 2004) ("A party must generally exhaust administrative remedies before bringing an action challenging an agency decision; this allows the agency to apply its expertise and correct its own errors."); Mount Juneau Enters. v. City & Borough of Juneau, 923 P.2d 768, 777 (Alaska 1996) ("Since an administrative appeal is clearly provided for, exhaustion of remedies is required in this case.").
[16] Mount Juneau Enters., 923 P.2d at 776-77 (quoting Ben Lomond, Inc. v. Municipality of Anchorage, 761 P.2d 119, 122 (Alaska 1988)).
[17] See State, Dep't of Labor, Wage & Hour Div. v. Univ. of Alaska, 664 P.2d 575, 581 (Alaska 1983) ("The doctrine of exhaustion of administrative remedies is an expression of administrative autonomy and a rule of sound judicial administration." (citing B. SCHWARTZ, ADMINISTRATIVE LAW § 172, at 498 (1976))); Eidelson v. Archer, 645 P.2d 171, 176 (Alaska 1982) ("A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene." (quoting McKart v. United States, 395 U.S. 185, 194-95, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969))).
[18] Cf. Alaska R.App. P. 602(a)(2) (stating that the 30-day time limit for appealing agency decisions to superior court "does not begin to run until the agency has issued a decision that clearly states that it is a final decision and that the claimant has [30] days to appeal"); 7 AAC 105.260(d), (f)(3) (requiring recoupment notice for overpayments other than those identified in audits to include: "(1) the reason for the recoupment; (2) the amount of the overpayment that the department will recoup; and (3) notice of the provider's right to an appeal").
[19] City of Homer v. Campbell, 719 P.2d 683, 686 (Alaska 1986) (citing Mullane v. Cent. Hanover Bank & Trust, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).
[20] Heitz v. State, Dep't of Health & Soc. Servs., 215 P.3d 302, 308 (Alaska 2009); see also Baker v. State, Dep't of Health & Soc. Servs., 191 P.3d 1005, 1009-13 (Alaska 2008).
[21] Smart had already refunded the one actual overpayment identified by the audit, in the amount of $240, long before receiving this letter from DHSS and thus had little incentive to challenge the final audit report.
[22] See Baker, 191 P.3d at 1009-13 (holding that due process required notice of reduction of authorized hours of personal care attendant services to include the form that provided the basis for calculating benefits).
[23] Heitz, 215 P.3d at 307; see also Allen v. State, Dep't of Health & Soc. Servs., Div. of Pub. Assistance, 203 P.3d 1155, 1167-68 (Alaska 2009) (holding that adequate notice should allow its recipient "to assess whether or not the agency's calculations are accurate" and "to detect and challenge mistakes").
[24] It would thus serve little purpose to order DHSS to reissue due process-compliant notice to Smart and we decline to do so. Cf. Allen, 203 P.3d at 1169-70 (ordering agency, if it wished to pursue recoupment claim, to issue adequate notice showing how the claim was calculated).
[25] Smart also contends that DHSS's failure to afford audited Medicaid providers with a right to a pre-deprivation hearing violates due process. According to DHSS, it has provided such hearings since 2008, when a superior court determined that pre-deprivation hearings were required by due process. See Muhlenbruch v. State, Dep't of Health & Soc. Servs., Div. of Health Care Servs., No. 3AN-06-12098 CI, 2008 WL 4612547 (Alaska Super., Feb. 12, 2008). DHSS did not appeal that ruling and concedes in its brief that it is legally bound by the ruling. DHSS further suggests that Smart's audit would have been held in abeyance had she filed an appeal of the final audit report and that she would eventually have been provided a hearing before the Office of Administrative Hearing under DHSS's new procedures. Because Smart did not appeal her final audit report, we do not know what process Smart would have been accorded and whether it would have satisfied due process. As counsel for Smart conceded at oral argument, we need not address the hearing issue given DHSS's representations. If Smart on remand requests review of DHSS's recoupment decision, DHSS represents that she will be entitled to a hearing.
[26] AS 44.62.280. Specifically, an agency must provide notice of the proposed regulation, AS 44.62.190, hold a public hearing at which interested persons may submit comments regarding the proposed regulation, AS 44.62.210, and file any adopted regulation with the lieutenant governor, AS 44.62.040; the lieutenant governor must then publish the regulation in the Alaska Administrative Register, AS 44.62.130.
[27] Squires v. Alaska Bd. of Architects, Eng'rs & Land Surveyors, 205 P.3d 326, 335 (Alaska 2009).
[28] See Jerrel v. State, Dep't of Natural Res., 999 P.2d 138, 144 (Alaska 2000).
[29] Id. at 143 (citing Messerli v. Dep't of Natural Res., 768 P.2d 1112, 1117 (Alaska 1989)).
[30] Alyeska Pipeline Serv. Co. v. State, Dep't of Envtl. Conservation, 145 P.3d 561, 573 (Alaska 2006).
[31] Id.
[32] 80 P.3d 231, 243-44 (Alaska 2003).
[33] Id.
[34] Cf. Agency for Health Care Admin. v. Custom Mobility, Inc., 995 So.2d 984, 986 (Fla.Dist.App. 2008) ("The formula [for calculating overpayment] does not by its own effect create rights, require compliance, or have the direct and consistent effect of law, because it is a mere formula and does not give the service provider any rights, or require compliance.").
[35] See AS 47.05.200; 7 AAC 105.220-.240.
[36] Jerrel v. State, Dep't of Natural Res., 999 P.2d 138, 144 (Alaska 2000).