Peter L. **FLANGAS,** Plaintiff-Appellee,

v.

**STATE BAR OF NEVADA et al., Defendants,**

John C. **Mowbray, Gordon Thompson, Cameron M. Batjer and Noel Manoukian, Defendants-Appellants.**

No. 80–5286.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 13, 1981.

Decided May 29, 1981.

Rehearing and Rehearing En Banc Denied Sept. 8, 1981.

part of four members of the Nevada Supreme Court. After our decision affirming the district court's earlier dismissal, the district court found, on the basis of those · allegations with no counter affidavits filed, that Flangas could not receive a fair hearing and granted a preliminary injunction against a pending state quasi-criminal proceeding. The State Bar of Nevada was dismissed as a defendant. The four justices contend that the district court abused its discretion in granting the preliminary injunction. We agree and reverse the district court.

I

On September 11, 1978, the Nevada State Bar Board of Governors (Board) recommended that attorneys Ross and Flangas be fined $30,000 each and suspended from the practice of law for two years for allegedly charging excessive fees in connection with the probate of an estate. On April 26, 1979, Flangas commenced an action in federal district court pursuant to 42 U.S.C. § 1983 against the Nevada State Bar, the Board, and the members of the Nevada Supreme Court. He sought preliminary and permanent injunctive relief alleging that: (1) the Board violated his due process rights because it harbored a pecuniary bias; (2) his equal protection rights were violated because he, unlike other disciplined attorneys, was not afforded an interlocutory appeal; and (3) the Board was biased in fact because it performed the conflicting functions of investigation and adjudication. The district court dismissed Flangas's action on the ground that it lacked jurisdiction to review the determination of the award because Flangas had the option of appealing to the Nevada Supreme Court. Flangas appealed the district court's decision and we affirmed.[1]

Donald Klasic, Deputy Atty. Gen., Carson City, Nev., argued, for defendants-appellants.

David Goldwater, Marrin J. Kravitz, Las Vegas, Nev., argued, Oscar Goodman, Las Vegas, Nev., on brief, for plaintiff-appellee.

Before WALLACE and FLETCHER, Circuit Judges, and KING,* District Judge.

WALLACE, Circuit Judge:

Four of the five justices of the Nevada Supreme Court appeal, claiming that the district court erred in granting a preliminary injunction against disciplinary proceedings involving attorney Flangas. In his original complaint, Flangas alleged that the Nevada disciplinary procedures were unconstitutional. The district court dismissed his action with prejudice. While his appeal of that dismissal was before this court, Flangas made a motion in the district court to amend his complaint based upon detailed and particularized allegations of bias on the

* Honorable Samuel P. King, United States District Judge, District of Hawaii, sitting by designation.

1. Our order stated in part:
    Under familiar rules of federal-state comity, the district court is affirmed on the basis

of lack of jurisdiction. On the authority of prior United States Supreme Court decisions and of decisions of this court, the district court and this court will not interfere with these pending state bar disciplinary procedures. The remedy in this posture lies with the United States Supreme Court upon peti-

While the appeal to this court was still pending, however, Flangas filed a motion for a new trial and a motion to file an amended complaint with the district court. He sought to add a new count to the original complaint, charging two of the three non-recused members of the Nevada Supreme Court with prejudice and bias towards him concerning the disciplinary proceedings. Flangas and William Richards, Chief Legal Advisor to the Nevada Supreme Court, submitted affidavits to the district court alleging that the Nevada Supreme Court was biased-in-fact against Flangas. An *in camera* affidavit was submitted by one of the Nevada Supreme Court justices, but apparently was not relied upon by the district judge.

In general, the affidavits charge an ongoing, continuous effort on the part of one of the Nevada Supreme Court justices, before and after he became a justice, to influence disciplinary action against Flangas and his associates. It is charged that he did so not only due to personal bias, but also to use resulting publicity in aid of his bid for election to the Nevada Supreme Court. It is also alleged that the influence of this justice is so pervasive that a fair hearing could not be secured before the Supreme Court even if substitute judges were provided from the Nevada trial court. Although that justice and one other recused themselves from considering the charges made against Flangas, two of the remaining three justices were also charged with bias-in-fact.

The district court granted the Board's motion to dismiss the action against the Board. Then, in view of the facts alleged in affidavits, the district judge granted Flangas's motions for preliminary injunction and leave to amend his complaint, despite our affirmance of his earlier order

granting a motion to dismiss in favor of the justices. The district judge reasoned that although he would normally dismiss the motion for preliminary injunction on the basis of abstention, as he had originally done, he was required to grant the injunction based upon the fact that the Nevada Supreme Court was still biased-in-fact, despite the recusal of the two justices. The district judge concluded that the bias-in-fact on the Nevada Supreme Court constituted an "exceptional circumstance" that is an exception to the general rule against enjoining ongoing state proceedings. *See Rosenthal v. Carr*, 614 F.2d 1219 (9th Cir. 1980). The district court derived this particular exception from *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), in which the Court held that when a state administrative body is incompetent to adjudicate a matter by virtue of pervasive bias, a district court need not abstain from issuing appropriate judicial relief. *Id.* at 577, 93 S.Ct. at 1697.

## II

In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court established the general doctrine that federal courts must refrain from hearing constitutional challenges to state action under certain circumstances in which a federal action is regarded as an improper intrusion on the right of a state to enforce its laws in its own courts. The basic policy reason articulated by the Court in *Younger* for this type of abstention is to foster "a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to

tion for writ of certiorari following the conclusion of the proceedings in the State of Nevada. The Supreme Court of Nevada has the power and the duty under the United States Constitution to entertain and rule upon due process and equal protection claims. The Nevada Constitution provides for a method of substitution of disqualified Supreme Court justices, if any there be, and

this avenue has not been pursued in this case.

We cannot say on this record that the procedures available in the Nevada judicial system will not provide for a full and fair opportunity for appellant to air his grievances and, if proved, to provide him an adequate remedy.

do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.* at 44, 91 S.Ct. at 750. *Younger* involved federal court abstention from enjoining a state criminal prosecution. The Court stated that a federal injunction may be properly issued against a pending state criminal prosecution only on a "showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Id.* at 54, 91 S.Ct. at 755.

*Younger* abstention applies where a state action is pending. *See id.* at 41, 91 S.Ct. at 749. *Younger* and its progeny have used the term "pending proceeding" to differentiate between state proceedings that have already commenced from those that are merely threatened. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 607, 95 S.Ct. 1200, 1209, 43 L.Ed.2d 482 (1975). In the instant case under the Nevada Supreme Court rules then in effect relative to attorney discipline, the Board of Bar Governors could make recommendations concerning attorney discipline. Any final binding action had to be taken by the Nevada Supreme Court either by accepting or rejecting the Board's recommendations. If no petition for review was filed within 60 days by the attorney against whom there was a recommendation of discipline, the recommendation of the Board was to be acted on summarily by the Nevada Supreme Court. If a petition for review before the court was timely filed, the Nevada Supreme Court was to review the matter and issue a decision. Although Flangas has not filed a petition for review of the Board's recommendation, the Nevada Supreme Court has apparently issued an order staying the time requirements for petitioning for review. Therefore, we find that the disciplinary procedure is "pending" for purposes of *Younger* abstention.

*Younger* left open the question of how far the abstention doctrine restricts a federal court from interfering with civil actions in state courts. *Younger* and its companion cases had all involved state criminal proceedings. The Court, however, has expanded the abstention doctrine into civil actions. *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue, Ltd., supra.* Although the Court has never held that the abstention doctrine precludes court interference with pending state attorney disciplinary proceedings, we have recently so held. *Rosenthal v. Carr, supra,* 614 F.2d at 1220. Other circuits have also extended *Younger* to attorney disciplinary actions. *Gipson v. New Jersey Supreme Court,* 558 F.2d 701, 704 (3d Cir. 1977); *American Civil Liberties Union v. Bozardt,* 539 F.2d 340, 342 (4th Cir.), *cert. denied,* 429 U.S. 1022, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976); *Anonymous v. Association of the Bar of City of New York,* 515 F.2d 427, 432 (2d Cir.), *cert. denied,* 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975).

### III

■ Thus, the abstention doctrine would normally bar the district court from enjoining the pending attorney disciplinary proceeding absent a showing by Flangas of "exceptional circumstances." *Rosenthal v. Carr, supra,* 614 F.2d at 1220. A rare instance in which the Court has found an exceptional circumstance that established an exception to the *Younger* rule was *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). In *Gibson,* appellees were licensed optometrists employed by Lee Optical Co., and were not members of the Alabama Optometric Association (Association). Appellees were charged by the Association with unprofessional conduct. The complaint was filed with the Alabama Board of Optometry. All members of the Board were also members of the Association. The appellees sought an injunction in federal district court under the Civil Rights Act claiming that the Board was biased. The Court held that the *Younger* rule did not require the district court to abstain in favor of the pending Board proceeding since the appellees had alleged and the district court had concluded that the Board's bias rendered it incompetent to adjudicate the issues. Because the Board was composed solely of private practitioners and the corporate employees it sought to bar from

private practice constituted half the optometrists in the state, the district court was warranted in concluding that the Board members' pecuniary interest disqualified them from considering the revocation of appellees' licenses to practice optometry. *Id.* at 578–79, 93 S.Ct. at 1697–98.

Flangas apparently contends that the district court should not abstain in the instant case because the alleged bias of the Nevada Supreme Court fits within the *Gibson* exception to *Younger.* We conclude, however, that because of Flangas's failure to utilize Nevada's disqualification procedures, we are unable to determine whether this case will fit within the *Gibson* exception to *Younger.* There is no indication in *Gibson* that there was a statutory procedure for disqualification of the biased Board members. Such procedures exist under Nevada law. Section 1.225 of the Nevada Statutes provides in part:

> 1. A justice of the supreme court shall not act as such in an action or proceeding when he entertains actual bias or prejudice for or against one of the parties to the action.
>
> .   .   .   .   .
>
> 4. Any party to an action or proceeding seeking to disqualify a justice of the supreme court for actual or implied bias shall file a charge in writing, specifying the facts upon which such disqualification is sought. Hearing on such charge shall be before the other justices of the supreme court.
>
> 5. Upon the disqualification of a justice of the supreme court pursuant to this section, a district judge shall be designated to sit in his place as provided in section 4 of article 6 of the constitution of the State of Nevada.

Nev.Rev.Stat. § 1.225 (1979).

Article 6, section 4 of the Nevada constitution provides in part:

> In case of the disability or disqualification, for any cause, of the chief justice or one of the associate justices of the supreme court, or any two of them, the governor is authorized and empowered to designate any district judge or judges to sit in the place or places of such disqualified or disabled justice or justices. . . .

Nev.Const. Art. 6, § 4.

■ Flangas has failed to utilize these statutory and constitutional measures available under Nevada law to cure the alleged bias of any member of the Nevada Supreme Court. Flangas argues that the procedures for disqualification of biased judges are inadequate because the entire Supreme Court was biased-in-fact and because the influence of one of the justices over the entire state judiciary is so pervasive that it would be impossible to assemble five unbiased judges to review the charges made against him. However, Flangas may not simply ignore the disqualification procedures based upon his perception that his chances of success in disqualifying the biased judges "are not auspicious." *Huffman v. Pursue, Ltd., supra,* 420 U.S. at 610, 95 S.Ct. at 1211.

Flangas also argues that the disqualification procedures are inadequate based upon his interpretation of the Nevada Constitution. He reads Article 6, section 2 of the constitution as requiring that at least three members of the five person Nevada Supreme Court reviewing a decision must have been elected by the Nevada electorate. No Nevada law was cited to us which determines the question. We decline to interpret the Nevada Constitution until the Nevada courts have had an opportunity to decide the issue. *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

If Flangas attempts to utilize the statutory and constitutional measures available under Nevada law to cure the alleged bias of the Nevada Supreme Court, and those attempts are unsuccessful because of an inadequacy in the Nevada procedures, it will then be appropriate for the federal courts to determine whether this case fits within the *Gibson* exception to *Younger.* Without first requiring Flangas to attempt to alleviate the alleged bias, we cannot adequately evaluate whether any exceptional circumstances exist "where irreparable injury is threatened to federally created rights."

*Lenske v. Sercombe,* 401 F.2d 520, 521 (9th Cir. 1968). We therefore reverse the judgment of the district court and remand the cause for dismissal of the complaint.

REVERSED AND REMANDED.