*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RBG BUSH PLANES, LLC, | ) | |
| ROBERT B. GILLAM, | ) | Supreme Court No. S-15217 |
| and MCKINLEY CAPITAL | ) | |
| MANAGEMENT, LLC, | ) | Superior Court No. 3AN-12-10793 CI |
| | ) | |
| Appellants, | ) | O P I N I O N |
| | ) | |
| v. | ) | No. 6978 – January 9, 2015 |
| | ) | |
| KENNETH KIRK, in his official | ) | |
| capacity as Chair of the Alaska | ) | |
| Public Offices Commission, and | ) | |
| PAUL R. DAUPHINAIS, in his | ) | |
| official capacity as Executive Director | ) | |
| of the Alaska Public Offices | ) | |
| Commission, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Kevin M. Saxby, Judge.

Appearances: Timothy A. McKeever, Holmes Weddle & Barcott, PC, Anchorage, for Appellant RBG Bush Planes LLC. JL McCarrey, McKinley Capital Management LLC, Anchorage, Attorney for Appellant McKinley Capital Management LLC. Ronald L. Bliss, Bliss Wilkens & Clayton, Anchorage, for Appellant Robert B. Gillam. John M. Ptacin, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee Paul R. Dauphinais. William E. Milks, Assistant Attorney General, and Michael C. Geraghty, Attorney General, Juneau, for Appellee Kenneth Kirk.

Before: Winfree, Stowers, and Bolger, Justices.
[Fabe, Chief Justice, and Maassen, Justice, not participating.]

BOLGER, Justice.

## I.    INTRODUCTION

Robert Gillam and two of his business ventures (collectively, Gillam) filed suit, alleging that the Alaska Public Offices Commission should not be allowed to investigate and decide whether Gillam had committed certain campaign finance violations. Gillam alleged that both the Executive Director and the Chair of the Commission were biased and that further consideration by the Commission would violate his right to due process protected by the Alaska and federal constitutions and his Alaska constitutional right to a fair investigation. The superior court concluded that Gillam's claims are not ripe and that Gillam has failed to exhaust his administrative remedies. We agree that there is an administrative recusal procedure for Gillam's state law claims and that Gillam must exhaust that remedy before bringing his state law claims to court. We also agree that Gillam's federal due process claim is not ripe because the recusal procedure may resolve that claim.

## II.    FACTS AND PROCEEDINGS

The Alaska Public Offices Commission is appointed by the governor[1] and charged with interpreting and enforcing Alaska's campaign finance laws.[2] In that capacity, the Commission investigates and adjudicates claims that those laws have been

---

[1]    AS 15.13.020.

[2]    AS 15.13.030; *see also Alaska Right to Life Comm. v. Miles*, 441 F.3d 773, 776 (9th Cir. 2006).

violated. There are five commissioners[3] who appoint a chairperson[4] and who may employ an executive director, as well as any additional staff they require.[5]

A person who suspects a violation of campaign finance laws may file a complaint with the Commission, and the complaint must satisfy several formal requirements.[6] When the Commission receives the complaint, its staff determines whether the complaint satisfies those formal requirements, and, if so, the staff investigates the complaint and prepares a report of its findings.[7] Finally, the Commission holds a hearing and issues a decision,[8] which is appealable to the superior court.[9]

In August 2012 Joel Natwick filed a complaint with the Commission against the three appellants: Gillam, RBG Bush Planes, and McKinley Capital Management. The Commission staff accepted the complaint over Gillam's objection that it failed to meet the formal requirements mentioned above, and it asked Gillam to produce several documents for purposes of an investigation. The Commission requested

---

[3]     AS 15.13.020(a).

[4]     AS 15.13.020(g).

[5]     AS 15.13.020(i). Neither the executive director nor any other Commission employee may vote on matters decided by the Commission. *Id.*

[6]     2 Alaska Administrative Code (AAC) 50.870 (2013). The complaint must be in writing, signed "under oath and upon penalty of perjury" and notarized, and must contain certain information such as the facts constituting the alleged violation and the basis for the complainant's knowledge of those facts. *Id.*

[7]     2 AAC 50.875.

[8]     2 AAC 50.875(e); 2 AAC 50.891.

[9]     AS 15.13.380(g).

that an Administrative Law Judge (ALJ) be assigned to oversee the Natwick proceedings, and one was assigned.

In September 2012 there was apparently a meeting between Curtis Thayer, a Deputy Commissioner of the Department of Administration, and appellee Paul Dauphinais, the Executive Director of the Commission. Thayer later testified in a deposition that, at the meeting, Dauphinais asked for a budget increase so the Commission could investigate and thus "get" and "ruin" Gillam. At the same meeting, Dauphinais allegedly mentioned a conversation he had with the Securities and Exchange Commission (SEC) regarding purported wrongdoing that "would bring Mr. Gillam's business down."

Gillam filed suit in superior court in November 2012 against Elizabeth Hickerson, in her capacity as Chair of the Commission, and Paul Dauphinais, in his capacity as Executive Director of the Commission.[10] Gillam invoked 42 U.S.C. §§ 1983 and 1988, as well as provisions of the federal and Alaska constitutions, claiming his constitutional rights were being violated in the Natwick matter due to bias on the part of the Commission. Gillam asked that the court enjoin the Commission from being involved in any way with the Natwick complaint and appoint a special investigator to investigate the matter. He also asked that an independent ALJ or the superior court conduct any hearing to adjudicate the complaint.

Hickerson and Dauphinais moved to dismiss under Alaska Civil Rule 12(b)(6). They also moved to stay discovery pending the court's decision on dismissal. Gillam opposed the motions to dismiss and moved for a preliminary injunction to stay the Natwick proceedings. Gillam attached to his motion a portion of

---

[10] The current chair of the Commission, Kenneth Kirk, has recently been substituted in place of Elizabeth Hickerson.

the transcript of Thayer's deposition testimony as well as an affidavit from former Commission staff member Vullnet Greva to demonstrate the Commission's alleged bias against Gillam.

The superior court granted Gillam leave to submit supplemental briefing in response to the motions to dismiss and to address all pending discovery motions. Gillam submitted briefing, to which he appended additional evidence — notes from an interview with a former Commission attorney. The superior court then informed the parties that, because of the evidence that had been introduced post-pleading, it would convert the Rule 12(b)(6) motion to dismiss to a Alaska Civil Rule 56 motion for summary judgment. The superior court granted summary judgment to Hickerson and Dauphinais. Gillam now appeals to this court.

## III.   STANDARD OF REVIEW

"We review grants of summary judgment de novo, 'draw[ing] all factual inferences in favor of, and view[ing] the facts in the light most favorable to, the party against whom summary judgment was granted.' "[11]  "We will affirm the grant of summary judgment when the record presents no genuine issues of material fact and the movant was entitled to judgment as a matter of law."[12]

"Whether a type of claim generally requires exhaustion of administrative remedies is a legal question that we review *de novo*."[13]  But "[w]e review for abuse of

---

[11]     *Charles v. Stout*, 308 P.3d 1138, 1140 (Alaska 2013) (alteration in original) (quoting *Interior Cabaret, Hotel, Rest. & Retailers Ass'n v. Fairbanks N. Star Borough*, 135 P.3d 1000, 1002 (Alaska 2006)).

[12]     *Id.* (citing *Smith v. State*, 282 P.3d 300, 303 (Alaska 2012)).

[13]     *Winterrowd v. State, Dep't of Admin., Div. of Motor Vehicles*, 288 P.3d 446, 449 (Alaska 2012) (emphasis in original) (quoting *Smart v. State, Dep't of Health & Soc.*
(continued...)

discretion a superior court's determination of whether a plaintiff exhausted those remedies or whether the failure to exhaust should be excused."[14] Questions of ripeness are reviewed de novo.[15] An Alaska Civil Rule 56(f) decision is reviewed for abuse of discretion.[16]

## IV. DISCUSSION

The superior court granted summary judgment to Hickerson for three reasons: (1) failure to exhaust administrative remedies; (2) lack of ripeness; and (3) failure to allege "facts sufficient to overcome the presumption of integrity to which Ms. Hickerson and the other commissioners [were] entitled." The court also granted summary judgment to Dauphinais, noting that although the allegations against him were "more troubling," judicial intervention was nonetheless "improper" based on the claim's lack of ripeness.

As noted above, Gillam alleged claims under 42 U.S.C. § 1983 and the Alaska Constitution.[17] Specifically, he argued that the Commission violated the

---

[13](...continued)
*Servs.*, 237 P.3d 1010, 1014 (Alaska 2010)).

[14]     *Id.* (quoting *Smart*, 237 P.3d at 1014).

[15]     *State v. Am. Civil Liberties Union of Alaska*, 204 P.3d 364, 368 (Alaska 2009) (citations omitted).

[16]     *Mitchell v. Teck Cominco Alaska Inc.*, 193 P.3d 751, 757 (Alaska 2008) (citing *Hymes v. DeRamus*, 119 P.3d 963, 965 (Alaska 2005)).

[17]     42 U.S.C. § 1983 (2012) provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights,

(continued...)

Fourteenth Amendment to the United States Constitution and article I, section 7 of the Alaska Constitution. Both constitutional provisions protect one's right not to be deprived of life, liberty, or property without due process of law,[18] but the Alaska Constitution additionally protects "[t]he right of all persons to fair and just treatment in the course of legislative and executive investigations."[19]

With respect to Gillam's state constitutional claim, we agree with the superior court that Gillam failed to exhaust his administrative remedies. As to the federal constitutional claim, we conclude that although exhaustion of remedies was not required, the claim was not ripe for review. Thus, we affirm the superior court's grant of summary judgment against Gillam.[20]

## A.    Exhaustion Of Administrative Remedies

To determine "whether a complaint was correctly dismissed for failure to exhaust administrative remedies, we must decide whether (a) exhaustion of remedies was

---

[17](...continued)

> privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 offers "a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation." *Mitchum v. Foster*, 407 U.S. 225, 239 (1972).

[18]    U.S. CONST. amend. XIV, § 1; Alaska Const. art. I, § 7.

[19]    Alaska Const. art. I, § 7.

[20]    Because we affirm on exhaustion and ripeness grounds, we need not address the superior court's dismissal on the alternative, presumption-of-integrity ground. *See Winterrowd v. State, Dep't of Admin., Div. of Motor Vehicles*, 288 P.3d 446, 449-50 (Alaska 2012).

required; (b) the complainant exhausted those remedies; and (c) the failure to exhaust remedies was excused."[21]

### 1. Gillam was required to exhaust administrative remedies only with respect to his state constitutional claim.

As a general matter, "[e]xhaustion is required if a statute or regulation provides for administrative review."[22] "[C]ertain 'pure issues of law,' most notably constitutional issues [and] certain questions of statutory validity, are 'within the special expertise' of the court, . . . [but] only the purest legal questions, requiring no factual context, are exempt from the exhaustion requirement."[23] In other words, "exhaustion may be required when non-constitutional issues are present or when a factual context is needed for deciding the constitutional issue."[24]

In Commission proceedings,[25] the Alaska Administrative Procedure Act (APA) provides that "[a] party may request the disqualification of a hearing officer or agency member by filing an affidavit, before the taking of evidence at a hearing, stating with particularity the grounds upon which it is claimed that a fair and impartial hearing

---

[21]     *Id.* at 450 (citation omitted).

[22]     *Id.*

[23]     *Doubleday v. State, Commercial Fisheries Entry Comm'n*, 238  P.3d 100, 107 (Alaska 2010) (citation omitted) (quoting *Moore v. State, Dep't of Transp. & Pub. Facilities*, 875 P.2d 765, 767 (Alaska 1994)).

[24]     *Ben Lomond, Inc. v. Municipality of Anchorage*, 761 P.2d 119, 122 (Alaska 1988) (citing 4 KENNETH CULP DAVIS, ADMINISTRATIVE LAW TREATISE § 26:6 (2d ed. 1983)) (also noting that "successful pursuit of a claim through the administrative process could obviate the need for judicial review of the constitutional issues" and that "it is axiomatic to our system of justice that we have a factual context within which to review a case.").

[25]     *See* AS 44.62.330(a)(23).

cannot be accorded."[26] The resolution of Gillam's state constitutional claim would benefit from the type of factual record developed in an administrative resolution of such a request.[27] We thus conclude that Gillam would generally be required to exhaust this remedy before seeking judicial intervention.[28]

But because Gillam raised a federal constitutional claim under section 1983, our analysis does not end here. In *Patsy v. Board of Regents*, the United States Supreme Court held that a plaintiff need not exhaust state administrative remedies before filing a section 1983 suit in federal court,[29] and in *Felder v. Casey*, the Court expanded that holding to litigation commenced in state courts.[30] This court applied that rule in *Diedrich v. City of Ketchikan*, concluding that "federal law does not permit states to require exhaustion of administrative remedies as a prerequisite to the maintenance of a section 1983 claim."[31]

We disagree with the superior court's conclusion that a departure from *Diedrich* is warranted because Gillam's alleged injury involves a biased tribunal, thus raising the question of "whether and how [the injury] may be avoided in the first place."

---

[26] AS 44.62.450(c).

[27] *Cf. Voigt v. Snowden*, 923 P.2d 778, 782 (Alaska 1996) (noting that the administrative termination process could have allayed an employee's fears of a biased decision-maker); *Eufemio v. Kodiak Island Hosp.*, 837 P.2d 95, 99 (Alaska 1992) (noting that a hospital peer review committee could "identify unfair or arbitrary processes, such as a biased tribunal, and correct the deficiency to avoid litigation").

[28] Gillam raises various arguments as to why, despite this statutory procedure, no remedy existed. We address these arguments in the following sub-section.

[29] 457 U.S. 496, 516 (1982).

[30] 487 U.S. 131, 146-47, 153 (1988).

[31] 805 P.2d 362, 368 (Alaska 1991).

The superior court cited two Ninth Circuit decisions, *Flangas v. State Bar of Nevada*[32] and *Stivers v. Pierce*,[33] as establishing that a section 1983 plaintiff alleging bias "has a duty to avail himself of agency recusal procedures if they are provided for by statute." But neither case so decisively supports this proposition.

First, the decision in *Flangas* was based on the doctrine of abstention, under which a federal court "must refrain from hearing constitutional challenges to state action under certain circumstances in which a federal action is regarded as an improper intrusion on the right of a state to enforce its laws in its own courts."[34] Under this doctrine, such intrusion may nonetheless be warranted under "exceptional circumstances."[35] In *Flangas*, an attorney had sued in federal district court under section 1983, alleging bias on the part of the Nevada Supreme Court justices involved in a disciplinary proceeding against him.[36] The Ninth Circuit concluded that because the attorney "fail[ed] to utilize Nevada's disqualification procedures," the court was "unable to determine" whether the case presented "exceptional circumstances" necessary to warrant a federal injunction of the pending state court proceeding.[37] *Flangas* thus stands for the proposition that exhaustion of remedies may be required to enjoin a state court proceeding; it does not show that exhaustion of state administrative remedies can be required to *bring* a section 1983 claim in state court.

---

[32]     655 F.2d 946 (9th Cir. 1981).

[33]     71 F.3d 732 (9th Cir. 1995).

[34]     655 F.2d at 948 (citing *Younger v. Harris*, 401 U.S. 37 (1971)).

[35]     *Id*. at 949 (citing *Rosenthal v. Carr*, 614 F.2d 1219, 1220 (9th Cir. 1980)).

[36]     *Id*. at 947-48.

[37]     *Id*. at 949-50.

*Stivers* is similarly inapposite. In that case, the Ninth Circuit considered whether a section 1983 plaintiff had waived the issue of tribunal bias by failing to ask for recusal of the allegedly biased tribunal member before the tribunal adjudicated the underlying matter.[38] Citing only cases dealing with abstention, the court noted that "[w]here state law provides a mechanism for seeking recusal, the litigant *may* be required to avail himself of that mechanism."[39] But the court found that no recusal procedures existed,[40] and accordingly, it had no occasion to address the special protection afforded section 1983 claims under *Patsy* and its progeny.[41] Based on the clear rule articulated in this United States Supreme Court precedent,[42] we conclude that Gillam's federal constitutional claim is saved from dismissal on exhaustion grounds because it was brought under section 1983.[43]

---

[38]     71 F.3d at 748.

[39]     *Id.* (emphasis added) (citing *Partington v. Gedan*, 880 F.2d 116, 127 (9th Cir.1989) (noting recusal procedures in assessing whether "exceptional circumstances" existed); *Flangas*, 655 F.2d at 950).

[40]     *Id.*

[41]     *See Patsy v. Board of Regents*, 457 U.S. 496, 516 (1982) (concluding "that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983"); *Felder v. Casey*, 487 U.S. 131, 147 (1988) (concluding that given the goals of section 1983, Congress could not have "contemplated that those who sought to vindicate their federal rights in state courts could be required to seek redress in the first instance from the very state officials whose hostility to those rights precipitated their injuries.").

[42]     *See id.*

[43]     As we discuss in Part IV.B, however, we affirm the superior court's decision on the alternative ground that Gillam's section 1983 claim is not ripe.

Based on our decision in *Diedrich*, however, we also conclude that Gillam's state constitutional claim may be separated from his section 1983 claim for purposes of exhaustion. In *Diedrich*, the plaintiff challenged the termination of his employment with the City of Ketchikan under both section 1983 and other grounds.[44] In particular, he alleged that the City "had breached the covenant of good faith and fair dealing implied in his employment contract," that his discharge was retaliatory, and "that the City had violated his constitutional rights to substantive due process (premised in part on 42 U.S.C. § 1983) by offering a pretext for his termination."[45] The superior court treated the suit as an administrative appeal, holding that it was untimely under the applicable statute of limitations, which is 30 days.[46] On appeal, this court held that although the plaintiff's section 1983 claim could not be dismissed for lack of timeliness, the plaintiff's suit was nonetheless "properly considered an administrative appeal" with respect to the *non*-section 1983 claims, which were "appropriately dismissed as untimely."[47]

Thus, under *Diedrich*, Gillam was required to exhaust his administrative remedies with respect to his state constitutional claims, even though they are presented in the same action as his section 1983 claim.

### 2. The APA provides for administrative review of Gillam's bias claims.

Gillam contends that exhaustion was not required because no administrative remedies existed. But as noted above, a party to a Commission proceeding "may request the disqualification of a hearing officer or agency member by filing an affidavit, before

---

[44]    805 P.2d 362, 364-65 (Alaska 1991).

[45]    *Id.*

[46]    *Id.* at 365, 368; *see also* Alaska R. App. P. 602(a)(2).

[47]    *Diedrich*, 805 P.2d at 366, 368-69.

the taking of evidence at a hearing, stating with particularity the grounds upon which it is claimed that a fair and impartial hearing cannot be accorded."[48]

As an initial matter, we reject Gillam's contention that "ruling on whether the Commissioners and Staff are biased is outside the [Commission's] statutory authority." Alaska Statute 44.62.450(c) explicitly provides the Commission with the statutory authority to address allegations of bias within its ranks. Gillam is correct that the Commission was not created for the purpose of "investigating bias and managing compliance with due process requirements," but it is still statutorily authorized to do so when necessary. Gillam argues that he cannot be forced to submit to the Commission's disqualification proceeding without suffering constitutional injury because "the [Commission] is a biased tribunal."[49] However, Gillam's claim that the Commission is biased has not yet been adjudicated on the merits, so his argument is unavailing.[50]

Similarly, Gillam argues that the APA at AS 44.62.560(e) authorizes the court to "enjoin agency action in excess of constitutional or statutory authority at any

---

[48] AS 44.62.450(c).

[49] Along a similar vein, Gillam argues that the statutory disqualification procedures are not available because it would require an allegedly biased agency member to rule on his or her own disqualification. But the Commission has five members, and the statute provides that where a disqualification request "concerns an agency member," the disqualification issue "shall be determined by the *other* members of the agency." AS 44.62.450(c) (emphasis added).

[50] Gillam argues that for purposes of summary judgment, the court was required to assume the Commission was biased against him. This is accurate. However, even if we assume the Commission is biased against Gillam, the Commission should still be allowed the opportunity to recuse itself or some of its members, given the fact that recusal is proper in exactly such a situation — that is, where bias exists. Indeed, AS 44.62.450(c) provides for disqualification where a party states "with particularity" why "a fair and impartial hearing cannot be accorded."

stage of an agency proceeding."[51] But we cannot determine whether the Commission has acted in excess of its authority until Gillam has exhausted his administrative remedies by pursing the APA's procedure for disqualification.[52]

Gillam also argues that "the legislature contemplated circumstances where the superior court will hear administrative complaints normally subject to the [Commission's] primary jurisdiction." He points to two statutory provisions, each of which addresses a situation in which the Commission has failed to timely proceed on a complaint.[53] Because Gillam does not claim that the Commission failed to take timely action on the Natwick complaint, his proffered authority does not apply to this situation and cannot be used to support his argument that exhaustion should not have been required.

Contrary to Gillam's contention, moreover, the statutory disqualification procedures were available to him even before staff had completed its investigation and issued its report.[54] Gillam argues that had such a report been completed, it would have "serve[d] as an accusation, that would cause reputational and financial harm to [him], as previous Staff Reports have." But there is no apparent reason why Gillam could not

---

[51] Gillam makes this and the following argument in the ripeness portion of his brief, but they appear to be more relevant to exhaustion. We thus address them here.

[52] *See* AS 44.62.450(c).

[53] Alaska Statute 15.13.380(h) allows an administrative complainant to file in superior court if the Commission has failed to take action on a complaint within 90 days of filing; Alaska Statute 44.62.305(a) allows a party to an administrative proceeding to sue in superior court if "the state agency has unreasonably delayed the progress of the administrative proceeding."

[54] *See* AS 44.62.450(c) ("A party may request the disqualification of a hearing officer or agency member by filing an affidavit, before the taking of evidence at a hearing . . . .") .

have filed an affidavit, per the statutory procedure, as early as he suspected Commission bias — so long as he did so at some time "before the taking of evidence at a hearing."[55]

Additionally, Gillam asserts "the trial court fundamentally erred in its assumption that [he was] seeking a remedy confined to the *Natwick* complaint." But the scope of the remedy sought in Gillam's complaint is limited to the Natwick proceedings. He asked only that the Commission be disqualified from having any further involvement in that matter.

Finally, the disqualification procedure outlined in AS 44.62.450(c) represents an administrative remedy to Dauphinais's allegedly biased conduct. Even if the statutory procedure does not expressly address improper staff conduct, it nonetheless provides Gillam with an opportunity to prove how Dauphinais's alleged bias has tainted the other Commissioners, thus allowing the Commission to formulate a response. This response may include not only recusal of a Commissioner but also restrictions as to staff involvement in the Natwick matter.

### 3. Exhaustion of administrative remedies would not be futile.

Gillam points out that "the failure to exhaust administrative remedies is excused . . . where the pursuit of the administrative remedy would be futile due to the certainty of an adverse decision."[56] He argues that exhaustion of administrative remedies would have been futile here because "the evidence showed that the Commissioners and Staff were biased against" him. The superior court disagreed, distinguishing Gillam's

---

[55]    *Id.*

[56]    *See Bruns v. Municipality of Anchorage*, 32 P.3d 362, 371 (Alaska 2001) (internal quotation marks omitted).

case from one in which a regulatory commission refused to hear the plaintiff's claims at all, thus rendering exhaustion of administrative remedies "manifestly futile."[57]

The superior court instead compared Gillam's case to one in which a tribunal — the Department of Revenue — had received a memorandum from the Attorney General suggesting that the plaintiff's claim was untenable.[58]  There, the Department wrote a letter to the plaintiff, stating "[i]t would take a rare and unusual situation to disregard" the Attorney General's opinion, but also stressing the importance of the Department's formal review process.[59]  This court acknowledged it was "highly possible" that the Department would ultimately defer to the Attorney General's opinion and find against the plaintiff, but "a decision adverse to [the plaintiff's] interests [still did] not appear to be a 'certainty.' "[60]

Gillam argues that his case is more similar to one in which this court affirmed the superior court's decision to excuse exhaustion on futility grounds because the Department of Revenue refused to address the plaintiffs' constitutional challenge.[61] He also offers a similar case in which exhaustion was deemed futile because an employee attempting to sue regarding a collective bargaining agreement was prevented by his

---

[57]     *See Matanuska Elec. Ass'n, Inc. v. Chugach Elec. Ass'n, Inc.*, 99 P.3d 553, 560-61 (Alaska 2004).

[58]     *Standard Alaska Prod. Co. v. State, Dep't of Revenue*, 773 P.2d 201, 208-09 (Alaska 1989).

[59]     *Id.* at 209.

[60]     *Id.* (quoting *Municipality of Anchorage v. Higgins*, 754 P.2d 745, 747-48 (Alaska 1988) (holding that an exception to the rule would be unwarranted absent a showing that exhaustion "would so certainly result in an adverse decision as to render the remedy futile" (internal quotation marks omitted)).

[61]     *State, Dep't of Revenue v. Andrade*, 23 P.3d 58, 67 (Alaska 2001).

union representative from utilizing the proper administrative procedures.[62]  But those cases are distinguishable because the Commission has never refused to address Gillam's bias contentions.  Gillam's argument that, here, the Commission has "effectively refused" to address his claims because it is biased is unavailing for the reasons explained above.[63]

Finally, Gillam notes this court's holding that failure to exhaust may be excused "where the administrative procedures are ineffective because of . . . bias  . . . or the possibility that the claimant could face irreparable harm if the administrative process is followed."[64]   To this end, he asserts:  (1) "[s]ubmission to a fatally biased decisionmaking process is in itself a constitutional injury . . . "[65] and (2) the Commission will use the time required to exhaust administrative remedies to injure Gillam.  But the superior court only found fault with Gillam's failure to utilize the available administrative *recusal* procedures.  As explained above, those procedures anticipate situations in which bias may necessitate recusal, but they still require the agency itself to make that determination.[66]  Gillam's second contention is purely speculative.

Thus, the superior court did not abuse its discretion when it held Gillam had failed to show that exhaustion of administrative remedies was certain to be futile.  We

---

[62]     *Beard v. Baum*, 796 P.2d 1344, 1349 (Alaska 1990).

[63]     *See supra* note 50.

[64]     *Hymes v. DeRamus*, 222 P.3d 874, 883 (Alaska 2010) (quoting *Bruns v. Municipality of Anchorage*, 32 P.3d 362, 371 n.46 (Alaska 2001)).

[65]     *United Church of the Med. Ctr. v. Med. Ctr.  Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982).

[66]     *See supra* note 50.

therefore affirm the superior court's dismissal of Gillam's Alaska constitutional claim for failure to exhaust administrative remedies.

**B.**     **The Superior Court Did Not Err By Granting Summary Judgment For Lack Of Ripeness As To Gillam's Federal Constitutional Claim.**

The superior court also granted summary judgment for lack of ripeness, reasoning that Gillam's injury is merely prospective. Ripeness "depends on 'whether . . . there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' "[67] In particular, this court "examine[s] 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.' "[68]

Only Gillam's federal constitutional claim remains after our exhaustion analysis. Accordingly, our ripeness inquiry applies only to interests protected by the Fourteenth Amendment to the United States Constitution — namely, the right not to be deprived of life, liberty, or property without due process of law.[69] Gillam is correct to point out that "[s]ubmission to a fatally biased decisionmaking process is in itself a constitutional injury."[70] Indeed, "[a] fair trial in a fair tribunal is a basic requirement of

---

[67]     *State v. Am. Civil Liberties Union of Alaska*, 204 P.3d 364, 369 (Alaska 2009) (alteration in original) (quoting *Brause v. State, Dep't of Health & Soc. Servs.*, 21 P.3d 357, 359 (Alaska 2001)).

[68]     *Id.* (quoting *Brause*, 21 P.3d at 359).

[69]     U.S. CONST. amend. XIV, § 1; *see also Zinermon v. Burch*, 494 U.S. 113, 126 (1990) ("In procedural due process claims, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." (emphasis in original) (internal quotation marks omitted)).

[70]     *See United Church of the Med. Ctr.*, 689 F.2d at 701.

due process."[71]  In evaluating a procedural due process claim, a court must therefore examine "the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law."[72]  Here, no hearing has occurred, and thus Gillam's injury — for federal due process purposes — is purely prospective.[73]

The Ninth Circuit's decision in *Standard Alaska Production Company v. Schaible* is directly relevant to evaluating the ripeness of Gillam's federal constitutional claim.[74]  There, the State of Alaska filed suit in state court against a group of oil producers, seeking to recover from an alleged underpayment of royalties owed to the State.[75]  The producers filed suit in federal court under section 1983 for injunctive and declaratory relief against the state court proceedings, alleging that they would be deprived of their right to an impartial tribunal because, as Permanent Fund Dividend recipients, all potential judges and jurors in the state courts would have a direct interest

---

[71]  *Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)) (internal quotation marks omitted).

[72]  *Zinermon*, 494 U.S. at 126.

[73]  Gillam asserts that his alleged injuries are not merely prospective, but have already occurred or are ongoing.  In particular, he contends that: (1) the Commission staff accepted the Natwick complaint even though it was technically deficient; (2) during the Natwick investigation, the Commission staff made unreasonable document requests; and (3) the Commission staff has already contacted the SEC in an attempt to ruin Gillam and his business.  But these injuries relate solely to the investigative stage of the Natwick matter, and accordingly, are relevant only in the context of Gillam's Alaska constitutional claim regarding "fair and just treatment in the course of legislative and executive investigations."  Alaska Const. art. I, § 7.

[74]  874 F.2d 624 (9th Cir. 1989).

[75]  *Id.* at 625.

-19-                                                      6978

in the case's outcome.[76] The federal district court dismissed the oil producers' case on ripeness grounds, and the Ninth Circuit affirmed, noting that the producers had not attempted to use Alaska's judicial disqualification procedures to avoid potential conflicts and had not demonstrated that the procedures were "inadequate to resolve the issue of bias."[77]

Like the plaintiffs in *Standard Alaska Production*, Gillam has not taken advantage of the procedures available to prevent his "[s]ubmission to a fatally biased tribunal" from occurring.[78] The APA expressly provides for situations where, as here, "it is claimed that a fair and impartial hearing cannot be accorded."[79] Similarly, the Commission's regulations provide for disqualification of a Commissioner who is "unable to participate in a decision in an unbiased manner so as to reach a fair and impartial decision."[80] Accordingly, Gillam's procedural due process claim is only ripe if he can show that this procedure is "inadequate to resolve the issue of bias."[81]

Gillam raises various arguments as to why the APA's disqualification process is inadequate. For instance, Gillam argues that the Commission will be an ineffective investigator because "the Commissioners do not have any specialized

---

[76]    *Id.* at 625-26.

[77]    *Id.* at 629; *see also id.* at 626, 630.

[78]    *See United Church of the Med. Ctr.*, 689 F.2d at 701.

[79]    AS 44.62.450(c).

[80]    2 AAC 50.835.

[81]    *Standard Alaska Prod. Co.*, 874 F.2d at 629; *see also District of Columbia v. Craig*, 930 A.2d 946, 966-67 (D.C. Cir. 2007) (holding that procedural due process claims regarding tax assessments were unripe because plaintiffs still were in the administrative review process and "ha[d] not yet allowed the statutorily-prescribed process to run its course").

knowledge with regard to personnel issues." But AS 44.62.450(c) charges all agencies under the purview of the APA with deciding recusal issues as they arise, regardless of the agencies' standard functions.

Similarly, Gillam argues that because of the Commissioners' bias, they "necessarily cannot decide if they, and the Staff carrying out their policy, are biased." But as discussed above, the statutory scheme anticipates precisely the kind of allegation at issue here, and does not allow a Commissioner to vote on a request for his or her own disqualification.[82] And although, as Gillam points out, the APA may not specifically address staff misconduct, Gillam has presented no evidence that the Commissioners are unwilling to evaluate his allegations regarding Dauphinais's bias. Because Gillam has not shown the disqualification process to be facially inadequate, the superior court cannot know whether the process will be inadequate as applied until it has been given a chance to work.

Finally, we share the superior court's concerns regarding the lack of factual development, which the administrative process would help address.[83] As the superior court explained:

> [F]urther factual development will be valuable should a court need to address the issues again on appeal. For example, Mr. Dauphinais denies that the conversation which forms the basis for much of Mr. Gillam's complaint occurred as Mr. Gillam claims. The [Commission] has the time, resources, and expertise to quickly investigate this matter. . . . Likewise, the commissioners deny that Mr. Dauphinais pursued his alleged bias with their encouragement, approval, or even

---

[82]     *See supra* notes 49 & 50 and accompanying text.

[83]     As we noted in *Brause*, among the factors we look to in evaluating the ripeness of a claim is "the need for further factual development to aid decision." 21 P.3d 357, 360 (Alaska 2001) (internal quotation marks omitted).

knowledge. Allowing the commissioners the opportunity to consider and rule on the matter and then inspecting that administrative record is preferable, in this court's view, to hauling the commissioners into court at the outset as a means to test their impartiality.

Gillam argues that "[t]he factual development desired by the trial court was possible, and should have been obtained, by ruling on the pending discovery motions, a continuance to allow further discovery, and an evidentiary hearing." But this argument does not address the view that the facts would be better developed at the agency level.[84]

Gillam has not been subject to a hearing in the Natwick matter and has not availed himself of the process for ensuring that he receives a "fair trial in a fair tribunal."[85] Because Gillam has not shown that process to be inadequate, his claim of tribunal bias is not fit for judicial decision. We therefore affirm the superior court's decision to dismiss Gillam's section 1983 claim for lack of ripeness.

## C. The Superior Court Did Not Err By Failing To Consider And Grant Gillam's Request To Conduct Additional Discovery.

Gillam argues the superior court should not have granted summary judgment when there was a pending request for additional discovery.[86] Gillam's argument relies on Alaska Rule of Civil Procedure 56(f), which states: "Should it appear

---

[84] Gillam also argues the court improperly "considered potential delay to the Natwick investigation due to continued proceedings before the [s]uperior [c]ourt." But the superior court merely noted its fear that, over the course of judicial proceedings, "the facts giving rise to the initial complaint may be obscured." This is a reasonable concern, and one that does not evidence any desire on the part of the superior court to "rush" the Natwick proceeding, but rather to preserve its adjudicability.

[85] *See Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)) (internal quotation marks omitted).

[86] Gillam also takes issue with Hickerson's and Dauphinais's requests to stay discovery but provides no argument as to why their requests were improper.

from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment," order a continuance, or take similar such action. But to benefit from the rule, a party "must unambiguously request relief on Rule 56(f) grounds."[87]

Here, Gillam "reserve[d] the right to seek an ARCP 56(f) continuance" but appears never to have followed through. He argues that he "made it clear [he] was seeking a continuance to conduct necessary discovery to defend against summary judgment," but points to nothing in the record to support his claim. The superior court cannot have abused its discretion where Gillam failed to invoke Rule 56(f).

## V. CONCLUSION

The judgment of the superior court is AFFIRMED.

---

[87] *Mitchell v. Teck Cominco Alaska Inc.*, 193 P.3d 751, 758 (Alaska 2008).